# EXHIBIT C

## NONDISCLOSURE/NON-SOLICITATION AGREEMENT

This Agreement is made and entered into this ‎16th‎ day of ‎September‎, 2017 by and between FCX Solar, with a principal place of business at 3 Lamson Road, Mont Vernon, NH 03057 and ‎FTC Solar, INC‎, with a principle place of business at ‎11801 Domain Blvd‎ ‎Austin, TX 78758‎. FCX Solar and ‎FTC Solar‎ are sometimes referred to herein as the "Parties."

WHEREAS, the Parties have entered into discussions to evaluate the possibility of developing a business relationship (the "Business Relationship") during which one Party may disclose to the other Party certain proprietary information, including confidential information of a technical, financial or business nature: and,

WHEREAS, each Party desires to protect the confidentiality of such information.

NOW, THEREFORE, for and in consideration of the mutual promises contained herein, the Parties agree as follows:

1.    Confidential Information.  For purposes of this Agreement, the term "Confidential Information" shall include, but is not limited to technical, financial and other business information, trade secrets, know-how, formulas, processes, data, network configuration, and rights-of-way, drawings, customer lists, prices, any other non-public information, except for that information specified in Section 6 of this Agreement.  Confidential Information, when disclosed in written, machine-readable, or other tangible form by one Party to the other Party, shall be clearly marked as "Confidential".  Information which is disclosed orally and is identified at the time by the disclosing Party as being proprietary or of a confidential nature shall be treated as Confidential Information by the receiving Party and used only according to the terms of this Agreement.  Such information will be described by the disclosing Party in writing to the recipient within twenty (20) business days of its disclosure.

2.    Use of Confidential Information:  During the Term of this Agreement (as defined in Section 8 below), the Parties may disclose certain Confidential Information to each other, either by oral or written communications.  These disclosures will be made in reliance upon the understandings of a confidential relationship between the Parties as set forth herein.  Each Party agrees that, unless specifically authorized in writing by the other, it will:

(a) use the other Party's Confidential Information solely for the purpose of reviewing, discussing and evaluating the possibility of the Business Relationship, and

(b) promptly return to the other Party, upon request, any and all tangible material concerning the other Party's Confidential Information, including all copies and notes, whether such material was made, compiled by, or furnished by the disclosing Party or the receiving Party, or provide written statement that such material has been destroyed.

3.    Nondisclosure.  Each Party agrees to receive the Confidential Information in confidence.  Each Party agrees that it will treat the other Party's Confidential Information in the same manner as it treats like information of its own, but in all events it shall exercise at least a reasonable degree of care for preventing unauthorized disclosures of such Confidential Information.  To that end, neither Party will make any copies of Confidential Information received from the other Party that is in documented form, except for use by employees and consultants (collectively, "Representatives") with a need to know.  Each Party further agrees not to distribute, disclose or disseminate the other Party's Confidential Information, to anyone, except to its Representative who have a need to know.  Each Party agrees that any disclosure of the other Party's Confidential Information to the receiving Party's Representatives who have a need to know shall be limited to only so much of such Confidential Information as is necessary for that employee or consultant to perform his/her function and only after notifying such employees or consultants of this Agreement.

4.    Non-Solicitation of Customers, Customer Prospects and Vendors.  Each party agrees that during the term of this Agreement and for six (6) months after the termination thereof, regardless of the reason for termination, neither party will directly or indirectly, solicit or attempt to solicit any business from the other Party's Customers, Prospects or Vendors with whom there was Material Contact during the last two (2) years.  Material Contact means personal contact or the supervision of efforts of those who

**1**

have direct personal contact with Customers, Customer's Prospects, or Vendors in an effort to initiate or further a business relationship between either Party and such Customers, Prospects or Vendors.

5.     <u>Non-Solicitation of Employees</u>.  Each party agrees that during the term of this Agreement and for one (1) year after termination thereof, regardless of the reason for termination, neither party will directly or indirectly, on the Party's own behalf or on behalf or in conjunction with any person or legal entity, recruit, solicit or induce, or attempt to recruit, solicit or induce any non-clerical employee of either Party to terminate their employment relationship with either Party.

6.     <u>No License</u>.  Nothing contained in this Agreement shall be construed as granting or conferring any rights by license or otherwise in or to any Confidential Information disclosed to the receiving Party.  The disclosing Party retains all right, title and interest in and to such Confidential Information.

7.     <u>No Obligations</u>.  The furnishing of Confidential Information hereunder shall not obligate either Party to enter into any further agreement or negotiation with the other or to refrain from entering into an agreement or negotiation with any other party. Nothing in this Agreement shall be construed as creating any joint venture, teaming arrangement, partnership, or other formal business organization or agency arrangement, and neither Party will use the corporate name, logo, trademark or otherwise identify the other Party or any of its affiliated companies in any advertising, sales promotions, press releases, or publications without the express written authorization of the other Party.

8.     <u>Exceptions</u>.  The obligations imposed herein shall not apply to Confidential Information:

 (a) which becomes available to the public through no wrongful act of the receiving Party; or

(b) which may be published prior to the date hereof; or

(c) which is received from a third party without restriction and without breach of this Agreement; or

(d) which is independently developed by the receiving Party; and such independent development   can be demonstrated by written records; or

(e) which is disclosed pursuant to a requirement or request of a government agency or in a legal proceeding, in which case, the Party from which disclosure is required should promptly notify   the Party owning the information of any such requirement or request; or

(f) is already known to the receiving Party at the time of disclosure and such prior knowledge can   be demonstrated by written records.

Notwithstanding the above, all materials, including without limitation, documents, writings, designs, drawings, and specifications furnished and that are designated as Confidential Information shall remain the sole property of the disclosing Party and shall be promptly returned, together with all copies thereof, promptly at request of the disclosing Party or a written statement will be provided by the Receiving Party of their destruction.

9. <u>Term and Termination</u>.  The Agreement shall terminate upon the earlier of:  i) ten (10) days after written notice from either party to the other, or  ii) one (1) year from the effective date of the Agreement.  Notwithstanding any such termination, the obligations pursuant to this Agreement shall remain in full force and effect for a period of three (3) years thereafter.

10. <u>Assignment</u>.  This Agreement and the rights and duties of the Parties hereunder may not be assigned or delegated by either Party without prior written consent from the other.  Any attempted assignment or delegation without such consent shall be null and void.

11. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties and supersedes any prior or contemporaneous oral or written representations with regard to the subject matter thereof.  This Agreement may not be modified except by a writing signed by both Parties.

12. Governing Law. This Agreement shall be construed and enforced under and in accordance with and governed by the laws of the State of Pennsylvania. Both Parties agree and consent to personal jurisdiction and service and venue in any federal or state court within the State of Pennsylvania having subject matter jurisdiction, for the purposes of any action, suit or proceeding arising out of or related to this Agreement.

13. Remedy. Each Party acknowledges that use or disclosure by it of the disclosing Party's Confidential Information except as permitted by this Agreement may cause immediate and irreparable harm to the disclosing Party for which money damages would be inadequate. Therefore, the disclosing Party may be entitled to obtain injunctive relief for the receiving party's breach of any of its obligations hereunder in accordance with the laws of the State of Pennsylvania, United States of America, which shall award to the prevailing party all reasonable costs, including reasonable attorney fees and expenses incurred as a result of the dispute adjudication. Such remedy shall not be deemed the exclusive remedy for such breach but shall be in addition to all other remedies available at law or in equity.

14. General Disclaimer. Nothing in this Agreement shall obligate the disclosing Party to disclose to the recipient any particular information. NEITHER PARTY MAKES ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. NEITHER PARTY MAKES ANY GUARANTEES OR WARRANTIES, EXPRESS OR IMPLIED THAT THE INFORMATION PROVIDED IS SUITABLE FOR ANY INTENDED PURPOSE OR RESULT, OR REGARDING THE ACCURACY OR COMPLETENESS OF THE INFORMATION PROVIDED HEREUNDER.

15. Duplicate Originals. Duplicate originals of this Agreement shall be executed, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16. Effective Date. This Agreement takes effect as of the actual date of execution by all of the signatories signed below.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representative.

FCX SOLAR

By:

Name: Frank Oudheusden

Title: Owner FCX Solar

Date: 9/16/2017

Name of Company: FTC Solar, INC

By:

Name: Anthony P. Etnyre

Title: EVP Operations

Date: 16 Sept 2017