UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
FCX SOLAR, LLC,                                          :
                                                        :
                              *Plaintiff,*               :
                                                        :
          v.                                             :          Case No. 1:21-cv-03556-RA
                                                        :
FTC SOLAR, INC.,                                         :
                                                        :
                              *Defendant.*               :
                                                        :
-------------------------------------------------------- X

### REVISED[1] MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FTC SOLAR, INC.'S PARTIAL MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT

Noelle M. Reed
Daniel S. Mayerfeld (*pro hac vice* pending)
William S. O'Hare
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
Tel: (713) 655-5122
Fax: (713) 483-9122
Email: noelle.reed@skadden.com
          daniel.mayerfeld@skadden.com
          william.ohare@skadden.com


ATTORNEYS FOR DEFENDANT FTC
SOLAR, INC.

---

[1]   As directed by the Court during the July 23, 2021 initial status conference, FTC Solar, Inc. has revised its July 2, 2021 Memorandum of Law by changing citations to the Complaint (Dkt. 13) to citations to Plaintiff's First Amended Complaint (Dkt. 16).  In two instances, language was deleted to conform to the First Amended Complaint.  Those deletions are indicated by striking through the original text.  Citations to "Complaint" or "Compl." now refer to Plaintiff's First Amended Complaint.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL ALLEGATIONS ..................................................................................... 3

I.      The parties' early consulting relationship. ............................................................ 3

II.     Plaintiff approaches FTC about alleged "overlap" between FTC's Voyager and
        Plaintiff's intellectual property. ....................................................................... 4

III.    The parties enter into the Consulting Agreement and then the License Agreement. ......... 5

IV.     FTC determines that it does not owe any royalties under the License Agreement. ........... 7

V.      Plaintiff files suit in New York alleging breach of the License Agreement, fraud,
        and unjust enrichment and files suit in Texas alleging patent infringement. ................ 8

LEGAL STANDARD ............................................................................................... 8

ARGUMENT ......................................................................................................... 9

I.      Plaintiff fails to plead the elements of fraud with specificity. ................................ 9

        a.      FTC's statement that it was "largely in alignment" with FCX's meeting
                summary is not an actionable misrepresentation. ...................................... 10

        b.      FTC's alleged "overlap" statements are non-actionable legal opinions. .......... 12

        c.      The terms of the Consulting and License Agreements refute Plaintiff's
                claim of justifiable reliance on the alleged "overlap" statements. ............... 13

        d.      FTC specifically disclaimed any warranties or representations about the
                Products or any patent rights covered by the License Agreement. ............... 16

        e.      FCX's fraud claim is duplicative of its breach of contract claim. ............... 17

II.     Plaintiff cannot pursue a claim for unjust enrichment because the License and
        Consulting Agreements govern the subject matter of the claim. ............................ 20

III.    The Court should require Plaintiff to replead its patent infringement-based breach
        of contract claim. ...................................................................................... 22

CONCLUSION ....................................................................................................... 24

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Abraham v. Wechsler*,
   120 Misc. 811 (Sup. Ct., N.Y Spec. Term 1923),
   *aff'd*, 210 A.D. 876 (1st Dep't 1924)..............................................................................13

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
   659 F.3d 1121 (Fed. Cir. 2011)........................................................................................16

*Adyb Engineered for Life, Inc. v. Edan Administration Services Ltd.*,
   No. 1:19-cv-7800-MKV, 2021 WL 1177532 (S.D.N.Y. Mar. 29, 2021) ..........................18

*Albert Apartment Corp. v. Corbo Co.*,
   182 A.D.2d 500, 582 N.Y.S.2d 409 (1st Dep't 1992) .......................................................13

*Anwar v. Fairfield Greenwich Ltd.*,
   831 F. Supp. 2d 787 (S.D.N.Y. 2011),
   *aff'd sub nom. Pujals v. Standard Chartered Bank*, 533 F. App'x 7 (2d Cir. 2013).........21

*Araujo v. E. Mishan & Sons, Inc.*,
   No. 19-CV-5785 (GHW)(SN), 2020 WL 5371323 (S.D.N.Y. Aug. 7, 2020),
   *report and recommendation adopted*, No. 1:19-cv-5785-GHW, 2020 WL
   5369888 (S.D.N.Y. Sept. 8, 2020).....................................................................................23

*Argent Electric, Inc. v. Cooper Lighting, Inc.*,
   No. 03 Civ. 9794(RMB), 2005 WL 2105591 (S.D.N.Y. Aug. 31, 2005)..........................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................8

*Assured Guaranty Municipal Corp. v. DLJ Mortgage Capital, Inc.*,
   44 Misc. 3d 1206(A), 2014 N.Y. Slip Op. 51043(U) (Sup. Ct. N.Y. County 2014).........19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................8

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*,
   98 F.3d 13 (2d Cir. 1996)..................................................................................................18

*Browne v. Robb*,
   583 A.2d 949 (Del. 1990) ..................................................................................................14

*Campbell v. Plant Health Intermediate, Inc.*,
   No. 7:19-cv-3017 (PMH), 2020 WL 3127809 (S.D.N.Y. June 12, 2020).........................21

*Catskill Development, L.L.C. v. Park Place Entertainment Corp.*,
    547 F.3d 115 (2d Cir. 2008)..................................................................................13

*Clark Fitzpatrick, Inc. v. Long Island Railroad Co.*,
    70 N.Y.2d 382 (1987) .........................................................................................21

*Crigger v. Fahnestock & Co.*,
    443 F.3d 230 (2d Cir. 2006)..................................................................................13

*Deluca v. GPB Automotive Portfolio, LP*,
    No. 19-cv-10498 (LAK), 2020 WL 7343788 (S.D.N.Y. Dec. 14, 2020) ..........14

*DoubleLine Capital LP v. Odebrecht Finance, Ltd.*,
    323 F. Supp. 3d 393 (S.D.N.Y. 2018)..................................................................14

*Downey v. Adloox Inc.*,
    238 F. Supp. 3d 514 (S.D.N.Y. 2017)............................................................21, 22

*DynCorp v. GTE Corp.*,
    215 F. Supp. 2d 308 (S.D.N.Y. 2002)..................................................................17

*eCommerce Industries, Inc. v. MWA Intelligence., Inc.*,
    No. 7471-VCP, 2013 WL 5621678 (Del. Ch. Sept. 30, 2013).........................20

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011)..................................................................19

*Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.*,
    343 F.3d 189 (2d Cir. 2003)..................................................................................14

*Financial Guaranty Insurance Co. v. Putnam Advisory Co.*,
    783 F.3d 395 (2d Cir. 2015)....................................................................................9

*Green v. Covidien LP*,
    No. 18 Civ. 2939 (PGG), 2019 WL 4142480 (S.D.N.Y. Aug. 30, 2019).........11

*Grumman Allied Industries, Inc. v. Rohr Industries, Inc.*,
    748 F.2d 729 (2d Cir. 1984)..................................................................................16

*Harsco Corp. v. Segu*,
    91 F.3d 337 (2d Cir. 1996)....................................................................................14

*Hitachi Data Systems Credit Corp. v. Precision Discovery, Inc.*,
    331 F. Supp. 3d 130 (S.D.N.Y. 2018)..................................................................17

*In re IAC/InterActiveCorp Securities Litigation*,
    695 F. Supp. 2d 109 (S.D.N.Y. 2010)....................................................................8

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)..................................................................................9

*Lomaglio Associates Inc. v. LBK Marketing Corp.*,
    892 F. Supp. 89 (S.D.N.Y. 1995) .......................................................................19

*MacDermid Printing Solutions, Inc. v. Cortron Corp.*,
    No. 3:08cv1649 (MPS), 2014 WL 3943629 (D. Conn. Aug. 12, 2014)...........12

*McBeth v. Porges*,
    171 F. Supp. 3d 216 (S.D.N.Y. 2016)................................................................21

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)................................................................................8

*Nanopierce Technologies, Inc. v. Southridge Capital Management LLC*,
    No. 02 Civ. 0767 LBS, 2003 WL 21507294 (S.D.N.Y. June 30, 2003) ..........11

*Netherby Ltd. v. G.V. Licensing, Inc.*,
    No. 92 Civ. 4239 (MBM), 1993 WL 463679 (S.D.N.Y. Nov. 9, 1993)...........13

*Pilarczyk v. Morrison Knudsen Corp.*,
    965 F. Supp. 311 (N.D.N.Y. 1997),
    *aff'd mem.*, 162 F.3d 1148 (2d Cir. 1998) ......................................................11

*Ping Chen ex rel. United States v. EMSL Analytical, Inc.*,
    966 F. Supp. 2d 282 (S.D.N.Y. 2013)................................................................12

*Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Group, LLC*,
    No. 10 Civ. 9078(VM)(MHD), 2011 WL 4063344 (S.D.N.Y. Aug. 11, 2011) ...............18

*Richbell Information Services, Inc. v. Jupiter Partners, L.P.*,
    309 A.D.2d 288 (1st Dep't 2003) ......................................................................14

*Signify North America Corp. v. Axis Lighting Inc.*,
    No. 19cv5516 (DLC), 2020 WL 1048927 (S.D.N.Y. Mar. 4, 2020),
    *rev'd in part on other grounds on reconsideration*, No. 19cv5516 (DLC), 2020
    WL 2079844 (S.D.N.Y. Apr. 30, 2020)..............................................................23

*Singh v. NYCTL 2009-A Trust*,
    No. 14 Civ. 2558, 2016 WL 3962009 (S.D.N.Y. July 10, 2016),
    *aff'd,* 683 F. App'x 76 (2d Cir. 2017)..............................................................13

*Subramanian v. Lupin Inc.*,
    No. 17-CV-5040 (RA), 2020 WL 6075523 (S.D.N.Y. Oct. 15, 2020)..............20

*Telecom International America, Ltd. v. AT&T Corp.*,
    280 F.3d 175 (2d Cir. 2001)...............................................................................18

iv

*TIP Systems, LLC v. Phillips & Brooks/Gladwin, Inc.*,
    529 F.3d 1364 (Fed. Cir. 2008)..............................................................................11

*Triad International Corp. v. Cameron Industries, Inc.*,
    122 A.D.3d 531 (1st Dep't 2014) .........................................................................20

*Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*,
    87 F.3d 604 (2d Cir. 1996)...................................................................................20

*VGH Solutions, Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018)......................................................................22, 23

*Wall v. CSX Transportation, Inc.*,
    471 F.3d 410 (2d Cir. 2006).................................................................................18

*Zuyder Zee Land Corp. v. Broadmain Building Co.*,
    86 N.Y.S.2d 827 (Sup. Ct. N.Y. County 1949) ..................................................13

## RULES

Fed. R. Civ. P. 8 ....................................................................................................................9

Fed. R. Civ. P. 9(b) ...............................................................................................................8

Fed. R. Civ. P. 12(e) .............................................................................................................9

Defendant FTC Solar, Inc. ("FTC" or "Defendant"), respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Second and Third Claims for Relief of the Complaint (Dkt. 16 ("Compl.")) with prejudice, and for a More Definite Statement of the First Claim for Relief.

## PRELIMINARY STATEMENT

Two years ago, FCX Solar, LLC ("FCX" or "Plaintiff") and FTC negotiated and entered into two contracts: a Consulting Agreement in which FCX agreed to provide consulting services to FTC for a fixed hourly rate and a separate License Agreement in which FCX gave FTC the option to use FCX patented technology in exchange for a royalty. These contracts fully detail the terms of the parties' agreement and are not in any respect contingent upon each other. The contracts could be terminated on 30 days' notice for any reason. And both are now terminated. A dispute has arisen between the parties under the License Agreement. FCX asserts that FTC owes royalties that allegedly accrued while the agreement was in force. FTC disputes that the products it sold triggered the royalty provisions under the License Agreement. This should be a garden-variety licensing dispute over a limited amount of disputed royalties. But instead, FCX seeks over $133 million based on meritless allegations of fraud and unjust enrichment. These allegations are premised on the untenable theory that FCX was guaranteed to receive royalties under the License Agreement – a condition that is found nowhere in either agreement and that is inconsistent with the terms that are in the contracts.

Plaintiff's fraud and unjust enrichment claims are grounded in the allegation that in 2018, six months before the Consulting and License Agreements were executed, FTC acknowledged an unspecified "overlap" between FTC's Voyager solar tracker product and FCX's intellectual property. Plaintiff first unreasonably asks this Court to interpret this "overlap" statement as a

binding admission of patent infringement by FTC.  Plaintiff then illogically extrapolates from this nonexistent "admission" that (1) FTC must be breaching the License Agreement because it recently advised that its Voyager Tracker does <u>not</u> in fact infringe FCX's patents, and (2) if FTC has actually determined that its Voyager Tracker does not infringe, then FTC's 2018 "overlap" statement must have been an intentional misrepresentation of FTC's belief designed to induce FCX to enter into the Consulting Agreement.

The terms of the Consulting and License Agreements are irreconcilable with Plaintiff's theory that an acknowledgment of "overlap" somehow guaranteed Plaintiff future returns from the License Agreement.  The License Agreement did not require FTC to use FCX's technology at all – let alone in any particular quantity.  Both contracts could be terminated on 30 days' notice for any reason.  If Plaintiff in fact entered into or performed under the Consulting Agreement only because it believed it was guaranteed to receive greater compensation from the License Agreement, these provisions taken in combination make Plaintiff's reliance on FTC's alleged statement unreasonable as a matter of law.  And Plaintiff fails to identify any payment that was due under the License Agreement during the one-year term of the Consulting Agreement but not paid.  Finally, because the Consulting Agreement governs FCX's provision of consulting services and the compensation for those services, FCX cannot maintain a claim for unjust enrichment premised on those services.

Defendant also moves here for a more definite statement of Plaintiff's breach of contract claim.  That claim is premised on patent infringement allegations but fails to identify any allegedly infringing product, fails to identify any sales for which FCX has not already received payments under the License Agreement, and offers no explanation of how the unnamed FTC products purportedly do infringe.

Accordingly, this Court should dismiss Plaintiff's fraud and unjust enrichment claims, and require Plaintiff to amend its breach of contract claim.

## FACTUAL ALLEGATIONS[2]

FTC is a global provider of solar tracker systems, technology, and engineering services for utilities and other large solar power producers.[3]  A solar tracker is a device that "move[s] photovoltaic modules to adjust an angle of incidence of the sunlight on the surface of the [photovoltaic] modules."  (Compl. Ex. A at 56).  "By tracking the position of the sun," the solar tracker often "produce[s] 20-30% more energy than fixed-tilt systems."  (*Id.*).  Plaintiff FCX provides engineering services to solar power developers and develops intellectual property in the solar structures space.  (Compl. ¶ 2.)

### I.      The parties' early consulting relationship.

The parties' business relationship began when Plaintiff's sole members, Christopher Needham and Frank Oudheusden, met with FTC executives at the Solar Power International Conference on September 11, 2017.  (*Id.* ¶ 29.)  Plaintiff alleges that at that meeting, they discussed a proposed consulting engagement to evaluate the "competitive strength" of one of FTC's solar tracker models, the AP90.  (*Id.*)  After the parties completed a short consulting arrangement, they entered into a nondisclosure agreement pursuant to which Plaintiff disclosed to FTC intellectual property concerning a "passive load-sharing damper."  (*Id.* ¶¶ 30-31, Ex. C.)

---

[2]     Facts taken from Plaintiff's Complaint are assumed to be true only for the purposes of this Partial Motion to Dismiss and for a More Definite Statement.

[3]     *See About FTC Solar*, FTC Solar, https://ftcsolar.com/company/ (last visited July 1, 2021).

**II.    Plaintiff approaches FTC about alleged "overlap" between FTC's Voyager and Plaintiff's intellectual property.**

At the next Solar Power International Conference, in September 2018, Needham and Oudheusden saw FTC's prototype of the successor to the AP90, the FTC Voyager Tracker.  (*Id.* ¶ 34.)  Plaintiff contends that the Voyager Tracker they observed "utilized Plaintiff's design for a 'damper,'" a component that absorbs potentially damaging wind vibration and wind shock.  (*Id.* ¶ 36.)  Needham and Oudheusden allegedly confronted FTC executives about "the unlicensed use of Plaintiff's intellectual property."  (*Id.* ¶ 38.)  Oudheusden "memorialized" this meeting in an email attached as Exhibit D to the Complaint.  In the email, Oudheusden wrote that when "FCX [was] invited to see the new design . . . it was discovered that vital design features" of the Voyager Tracker prototype "had a possible overlap with FCX intellectual property which was disclosed to FTC." (Compl. Ex. D at 4).  According to Oudheusden, when the parties met again later that day, "FTC had researched both their design process, timeline and technology . . . and discovered that they had inadvertently overlapped Voyager design features with FCX IP" and "both parties (FTC and FCX) agreed that overlap existed and that a viable licensed solution could be reached amicably." (*Id.*)

In response, FTC's CEO Anthony Etnyre replied only "[w]e are largely in alignment with the summary below" and proposed terms for a license agreement with FCX.  (*Id.* at 1.).  FCX alleges that Etnyre's response was intended to "induc[e] Plaintiff to enter into a licensing agreement and/or a consulting agreement with FTC."  (*Id.* ¶ 47.)  But Oudheusden's summary of the parties' meeting makes no mention of any proposed consulting agreement, and Etnyre's email was a response to *FCX's* proposal that the parties enter into a licensing agreement.  (*Id.* Ex. D at 3-5.)

**III.    The parties enter into the Consulting Agreement and then the License Agreement.**

On April 6, 2019, approximately six months after Etnyre's email, the parties executed the Consulting Agreement, in which Plaintiff contracted to provide consulting services to FTC related to the "continued development of the Voyager single-axis tracker platform" for $190 per hour for a term of one year.  (*Id.* ¶¶ 58-61, Ex. A at Section 9.1.)  When Plaintiff signed the Consulting Agreement, there was no license agreement between the parties.  Instead, they were still "participating in good-faith negotiations" of the terms of a future license.  (*Id.* ¶ 62.)

The Consulting Agreement's merger clause provides that the contract itself constitutes a full and complete statement of the agreement between the parties.  (*Id.* Ex. A at Section 9.1.) Although the Consulting Agreement acknowledges that the parties anticipate entering into a license agreement, it does not condition the terms of the Consulting Agreement in any way upon either the execution of or the incorporation of any specific term in a future license agreement.  (*Id.* Ex. A.).

On May 13, 2019, five weeks after the Consulting Agreement was signed, the parties entered into the License Agreement, which granted FTC a royalty-bearing license to make and sell "Products" that incorporate certain of Plaintiff's intellectual property.  (*Id.* ¶¶ 68, 75-78.) "Product" is defined as "any product . . . [that] would (without the license granted hereunder) infringe directly, indirectly by inducement of infringement, or indirectly by contributory infringement, at least one issued Valid Claim or any pending Patent claim . . . ." (*Id.* ¶ 76, Ex. B at Section 1.8.)  A "Valid Claim" is defined as "an issued and unexpired Patent that has not been abandoned, revoked, or held unenforceable or invalid" or "a claim in any pending application for a Patent that was filed in good faith and has not been cancelled, withdrawn, abandoned, or finally disallowed . . . ."  (*Id*. Ex. B at Section 1.13.)  Section 1.5 of the License Agreement defines

"Patent(s)" as:

> the patent applications set forth on Exhibit A [US Patent Application Serial No. 16/274,557], as well as any patents or other registrations issuing therefrom and any continuation, divisional, reissue, renewal, or extension, in whole or in party, of any such applications or registration and any in such applications or registration and any international counterparts.

(*Id.* at Section 1.5.)

The License Agreement requires FTC to make a milestone payment of $15,000 within 30 days after the Effective Date of the agreement.  (*Id.* at Section 3.1(a).)  FCX does not allege that FTC failed to make this payment.  Three additional milestone payments were due only if FTC or its affiliates "included device design in the bill of materials for a Solar Tracker that can be quoted or ordered commercially . . . ."  (*Id.* at Section 3.1(b)-(d).)  The License Agreement also requires FTC to pay royalties to FCX based on the wattage generated by solar panels "controlled by any Solar Tracker Sold by" FTC.  (*Id.* ¶¶ 91-93, Ex. B at Sections 3.1-3.2.)  "Solar Tracker" is defined as a device incorporating the "Product."  (*Id.* Ex. B at Section 1.12.)

FCX affirmatively alleges that FTC paid approximately $1.4 million in royalties to FCX for the period from Q3 2019 to Q2 2020.  (*Id.* ¶¶ 125-29).  Notably, the Consulting Agreement expired in April 2020 – within Q2 2020.  Although FCX alleges that two milestone payments "should have been made no later than May 1, 2020," it does not allege the condition precedent that FTC actually "include[d] a device design in the bill of materials for a Solar Tracker."  (*Id.* ¶¶ 91, 144.)

The parties specifically anticipated that the License Agreement might not be as lucrative as Plaintiff hoped: Plaintiff negotiated for the option to terminate the License Agreement early if the royalties due fell below a specified minimum unless FTC chose to make a shortfall payment.

(*Id.* ¶ 96, Ex. B at Section 3.3(a).)  The License Agreement also includes a merger clause and a disclaimer of representations:

> NEITHER PARTY MAKES ANY (AND HEREBY DISCLAIMS ALL) REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED OR STATUTORY, INCLUDING AS TO THE PRODUCTS, THE FITNESS FOR ANY PARTICULAR PURPOSE, . . . PATENTABILITY, AND/OR BREADTH OF ANY PATENT RIGHTS . . . .

(*Id.* Ex. B at 9-10.)  FTC had the right to terminate the License Agreement "for convenience" upon 30 days' notice – a right it exercised on April 30, 2021.  (*Id.* Ex. B at Section 10.3.)

## IV.    FTC determines that it does not owe any royalties under the License Agreement.

Plaintiff affirmatively alleges that FTC initially paid royalties under the License Agreement through Q2 2020 – including during the entire one-year term of the Consulting Agreement.  (*Id.* ¶¶ 125-130, Ex. A at Section 9.1.)  FCX alleges that FTC did not make any payments under the License Agreement for the period after May 2020.  (*Id.* ¶¶ 144-45, 155.)  FCX acknowledges that FTC's Etnyre explained to FCX that "it was FTC's position that the royalty should not have been paid for Project A [one of FTC's solar tracker projects] because the solar array installed in Project A added an ancillary mechanism."  (*Id.* ¶ 147.)

In a December 23, 2020 letter, FTC advised Plaintiff that it had determined after a review of the technology that no royalties or other payments were due to FCX because FTC "has not incorporated dampers that would infringe any issued claim of the '231 patent or '097 patent into any of its Voyager Tracker systems", and that past royalty payments "may have been made in error because FTC's dampers have at all times been, and continue to be, noninfringing."  (*Id.* Ex. J at 1.)  FTC's December 23, 2020 letter was written in response to, and expressly refers to, a November 30, 2020 letter from FCX.  (*Id.* Ex. J at 1.)  FCX did not attach that letter to its Complaint, perhaps because FCX's position in that letter was that FTC owed only approximately $690,000 in royalties and other payments and not the $133 million alleged in its Complaint.

**V.     Plaintiff files suit in New York alleging breach of the License Agreement, fraud, and unjust enrichment and files suit in Texas alleging patent infringement.**

On April 21, 2021, Plaintiff filed the original complaint asserting claims for breach of the License Agreement, fraudulent inducement of the Consulting Agreement, and unjust enrichment based on services provided under the Consulting Agreement.  On May 29, 2021, Plaintiff filed a patent infringement suit against FTC in the United States District Court for the Western District of Texas based on FTC's sale of products that allegedly infringed a patent for which "FTC once held a license" – referring to the License Agreement.  (*See FCX Solar, LLC v. FTC Solar, Inc.*, 6:21-cv-548-ADA, Dkt. 1 ¶ 20, (W.D. Tex. May 29, 2021) (attached as Exhibit 1).)

## LEGAL STANDARD

*Motion to Dismiss.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations must be sufficient to move the "claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  While the Court "accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor, . . . it does not credit 'mere conclusory statements' or 'threadbare recitals of the elements of a cause of action.'"[4]  *In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 115 (S.D.N.Y. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff's fraud claim must also meet a heightened pleading standard that requires Plaintiff to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Plaintiff

---

[4]     In considering a **motion** to **dismiss**, a court may consider "the facts as asserted within the four corners of the **complaint**, the **documents attached** to the **complaint** as exhibits, and any **documents** incorporated in the **complaint** by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

must "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted).

*Motion for More Definite Statement.* A complaint must be pled with sufficient particularity to notify the defendant as to the nature of the claim against it and the grounds upon which that claim rests. *See* Fed. R. Civ. P. 8. If a complaint is "so vague or ambiguous that a party cannot reasonably prepare a response," the Court may order the plaintiff to replead. Fed. R. Civ. P. 12(e).

## ARGUMENT

### I. Plaintiff fails to plead the elements of fraud with specificity.

In its Second Claim for Relief, Plaintiff alleges that it was fraudulently induced to enter into the Consulting Agreement by FTC's purported representations on September 26, 2018, and October 19, 2018, that (1) "FTC agreed" that the Voyager Tracker design "overlapped" with FCX's intellectual property and (2) "FTC would require a license in order to continue using the design."[5] (Compl. ¶ 189.) But Plaintiff's contention that it agreed to the hourly rate in the Consulting Agreement only "because it was contemplated that Plaintiff would also be compensated through the License Agreement" is refuted by Plaintiff's own allegations and by documents incorporated in the Complaint itself. (*Id.* ¶ 62.)

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015).

---

[5]   References to the "overlap" statement in this brief include both alleged misrepresentations.

9

Plaintiff's fraud claim hinges on FTC's allegedly false representation that its Voyager Tracker product "overlapped" with Plaintiff's intellectual property.  (Compl. ¶¶ 189-190.) Plaintiff apparently viewed this at best ambiguous language as a binding admission that FTC's product infringed Plaintiff's patents or patent applications.  (*Id.* Ex. D at 4.)  Building on that faulty premise, Plaintiff alleges that, if Plaintiff had known that FTC did not believe that the Voyager infringed FCX's patents or that FTC "did not intend to make any royalty payments or milestone payments under the License Agreement . . . Plaintiff would not have entered into or performed under the Consulting Agreement . . . ."  (*Id.* ¶ 177.)  Apparently, then, the gist of Plaintiff's complaint is that it believed that the alleged "overlap" statement by FTC was the equivalent of a binding promise that a future License Agreement would guarantee Plaintiff substantial royalties. (*Id.* Ex. D at 4.)

> **a.    FTC's statement that it was "largely in alignment" with FCX's meeting summary is not an actionable misrepresentation.**

The alleged misstatements on which FCX's claim of fraud turn are FTC's purported "agreement" in 2018 that (1) there was "overlap" between FTC's Voyager product and FCX's intellectual property and (2) a license would be an "appropriate solution."  (*Id.* ¶ 39.)  FCX fails to plead with specificity either that these statements were false or that they were statements of fact.

First and foremost, FTC's vague statement that it was "largely in alignment" with Plaintiff's lengthy summary of a meeting and proposed license cannot reasonably be read as affirming each and every fact in that summary.  At best, FTC's response begged the question which portion of the summary FTC was <u>not</u> aligned with.  But FCX apparently took no steps to determine where FTC was not "in alignment" with FCX.  And Plaintiff's claim that Etnyre's "alignment" statement was intended to induce FCX to enter into either the Consulting Agreement or the License Agreement is impossible to square with the email.  The email to which Etnyre is responding makes

no mention of any consulting agreement, and it is FCX who presses FTC to negotiate a license agreement <u>before</u> FTC indicated its "alignment." (*Id.* Ex. D at 2-5.)

Second, FCX's theory depends on interpreting FTC's statement of "alignment" with Plaintiff's claim of "overlap" as the equivalent of an admission of patent infringement. The word "overlap" means "to extend over or past and cover a *part of*." *Overlap*, Merriam-Webster Dictionary (2021) (emphasis added), https://www.merriam-webster.com/dictionary/overlap. But "[u]nder the 'all elements' rule, to find infringement, [an] accused device must contain 'each limitation of the claim, either literally or by an equivalent.'" *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1379 (Fed. Cir. 2008) (citation omitted). In other words, there can be an overlap of elements between a product and a patent claim and, at the same time, no infringement. The mismatch between "overlap" and "infringement" breaks the chain in Plaintiff's theory of inducement – which requires that the "overlap" statement led FCX to believe when it signed the Consulting Agreement that it was guaranteed to receive royalties from a yet-to-be-negotiated license agreement. Similarly, FTC's alleged agreement that a license would be "appropriate" cannot be read as a promise of future royalty payments.

Even if "overlap" could reasonably be interpreted as "infringement," it is Plaintiff's burden to plead why FTC's 2018 statement about "overlap" was false when it was made. *See Green v. Covidien LP*, No. 18 Civ. 2939 (PGG), 2019 WL 4142480, at *8-9 (S.D.N.Y. Aug. 30, 2019) (dismissing fraud claim because complaint "does not explain why these statements are false and misleading."); *Pilarczyk v. Morrison Knudsen Corp*., 965 F. Supp. 311, 321 (N.D.N.Y. 1997) (same), *aff'd mem.*, 162 F.3d 1148 (2d Cir. 1998). "If 'explain why' is to have any meaning" under Rule 9(b), "it must mean more than merely contradicting a statement, and offering as support a rewording of that statement in the negative." *Nanopierce Techs., Inc. v. Southridge Cap. Mgmt.*

*LLC*, No. 02 Civ. 0767 LBS, 2003 WL 21507294, at \*10 (S.D.N.Y. June 30, 2003).  Plainly stating that a statement is false is not enough to survive a motion to dismiss.  *See Ping Chen ex rel. United States v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 302-04 (S.D.N.Y. 2013).

Plaintiff attempts to satisfy this burden only by claiming that FTC's statement "was materially false or misleading if, as follows from the statements in FTC's December 23, 2020 letter, at the time that the statement was made FTC maintained a secret belief that the Voyager Tracker did not utilize any infringing intellectual property and that FTC could continue to produce and sell the Voyager Tracker without a license."  (Compl. ¶ 190.)  In other words, Plaintiff alleges that because FTC concluded with the aid of counsel in 2020 that its Voyager Tracker did not, in fact, infringe Plaintiff's patent, it is impossible that FTC actually believed two years earlier in 2018 that its product "overlapped" Plaintiff's patents.  This, of course, is silly.  Plaintiff itself alleges that FTC's 2018 "overlap" opinion was formed in the course of just a few hours on the day the accusation was made.  It is entirely reasonable that with the benefit of time and the aid of counsel, FTC determined that its initial belief that there was "overlap" was simply wrong.  And Plaintiff admits that FTC paid approximately $1.4 million to FCX under the License Agreement between May 2019 and May 2020 – conduct entirely inconsistent with Plaintiff's allegation that FTC never intended to perform under the License Agreement.  (*Id.* ¶ 168.)

**b.**     **FTC's alleged "overlap" statements are non-actionable legal opinions.**

Even if FTC's statement that it was "largely aligned" with Plaintiff's claim of "overlap" or that a license would be "appropriate" could reasonably be interpreted as admissions of infringement, the statements would be nonactionable opinions.  Under Plaintiff's interpretation, those statements can only be understood as a prediction about the outcome of a hypothetical legal proceeding.  This makes it an opinion rather than a statement of fact.  *See MacDermid Printing*

*Sols., Inc. v. Cortron Corp.*, No. 3:08cv1649 (MPS), 2014 WL 3943629, at *7 (D. Conn. Aug. 12, 2014) (representation about patent infringement "was a statement of opinion, not fact," because "there had been no determination by any court" on patent infringement at the time "the representation was made").

"[S]tatements of opinion generally cannot constitute fraud." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 134 (2d Cir. 2008); *see also Singh v. NYCTL 2009-A Tr.*, No. 14 Civ. 2558, 2016 WL 3962009, at *7 (S.D.N.Y. July 10, 2016) ("It is 'well settled' that 'fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law.'" (citation omitted)), *aff'd*, 683 F. App'x 76 (2d Cir. 2017); *Zuyder Zee Land Corp. v. Broadmain Bldg. Co.*, 86 N.Y.S.2d 827, 828 (Sup. Ct. N.Y. County) ("[A]n opinion or statement of law . . . even when inaccurate, cannot afford a basis for recovery in fraud."), *aff'd*, 276 A.D. 751 (1st Dep't 1949); *Abraham v. Wechsler*, 120 Misc. 811, 812 (Sup. Ct., N.Y Spec. Term 1923) ("In other words, the defendant represented that something was lawful, and the plaintiff claims it was unlawful. Such a representation does not amount to fraud."), *aff'd*, 210 A.D. 876 (1st Dep't 1924); *Netherby Ltd. v. G.V. Licensing, Inc.*, No. 92 Civ. 4239 (MBM), 1993 WL 463679, at *4-5 (S.D.N.Y. Nov. 9, 1993) (dismissing fraud claim because alleged misrepresentation was "merely an opinion about the legal effect of the licenses").[6]

c.   **The terms of the Consulting and License Agreements refute Plaintiff's claim of justifiable reliance on the alleged "overlap" statements.**

FCX must sufficiently plead that it reasonably relied on the alleged "overlap" misrepresentations to its detriment.[7]  *See Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir.

---

[6]   "[A]n expression of an intentionally false opinion on a matter of law may be actionable where a relationship of trust exists." *Netherby Ltd.*, 1993 WL 463679, at *4.  But Plaintiff does not and cannot plead such a relationship.

[7]   The elements of common law fraud are the same under New York and Delaware law.  *See Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006); *Albert Apt. Corp. v. Corbo Co.*, 182 A.D.2d 500, 582 N.Y.S.2d 409, *(cont'd)*

2006); *accord DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 461 (S.D.N.Y. 2018); *Harsco Corp. v. Segu*, 91 F.3d 337, 342 (2d Cir. 1996). "In assessing the reasonableness of a plaintiff's alleged reliance, [a court] consider[s] the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003).

Plaintiff contends that FTC's admission of "overlap" and the parties' resulting negotiation toward a licensing agreement led FCX to believe that it was guaranteed to earn royalties and other payments from the future license agreement. (Compl. ¶¶ 62, 193.) But Plaintiff's own allegations contradict its claim of reliance. First, when FCX executed the Consulting Agreement on April 6, 2019, the License Agreement and its "royalty provisions" did not even exist. (*Id.* ¶¶ 58, 68.) Plaintiff admits that the parties were still "participating in good-faith negotiations regarding the License Agreement" when they entered the Consulting Agreement. (*Id.* ¶ 62.) The parties did not execute the License Agreement until May 13, 2019 – five weeks after the parties executed the Consulting Agreement. (*Id.* ¶ 68.) Plaintiff does not allege that FTC affirmatively stated or guaranteed that it would enter into any license arrangement under terms acceptable to Plaintiff or under any particular terms. When Plaintiff agreed to accept $190 an hour for its consulting services, it had no idea what royalties or other compensation FTC might ultimately agree to in a future license agreement. Plaintiff's reliance, therefore, is based on an assumption that was not guaranteed to be realized and is unreasonable as a matter of law. *See Richbell Info. Servs., Inc. v.*

---

410 (1st Dep't 1992); *accord Browne v. Robb*, 583 A.2d 949, 955 (Del. 1990). "Under New York law, fraudulent inducement and fraudulent misrepresentation have identical elements of proof and 'can be treated together as common law fraud.'" *Deluca v. GPB Auto. Portfolio, LP*, No. 19-cv-10498 (LAK), 2020 WL 7343788, at *14 (S.D.N.Y. Dec. 14, 2020) (citation omitted).

*Jupiter Partners, L.P.*, 309 A.D.2d 288, 305 (1st Dep't 2003) (affirming dismissal of fraud claim "because reliance on the contingent future event of an IPO was not reasonable").

Second, the Consulting and License Agreements each contain terms that make Plaintiff's claimed reliance on the "overlap" statement unreasonable as a matter of law. The Consulting Agreement provides that it terminates automatically one year after its effective date and that it "may be terminated at any time for convenience by either party" on thirty days' notice. (Compl. Ex. A at Section 9.2.) The License Agreement similarly states that FTC "will have the right to terminate [the License] Agreement for convenience upon providing at least thirty (30) days written notice thereof." (*Id*. Ex. B at Section 10.3). No term of the Consulting Agreement is conditioned on the execution or continued existence of the License Agreement or upon FCX's receipt of any particular compensation through the License Agreement.

Similarly, nothing in either the License Agreement or the Consulting Agreement requires FTC to sell any, or any particular quantity, of the "Solar Trackers" that trigger royalty payment obligations – meaning FTC could have simply changed technologies after using FCX's consulting services for any period of time. And Plaintiff knew it might not receive substantial royalties under the License. The parties specifically agreed that if royalty payments fell below a defined minimum, Plaintiff had the right to terminate the License Agreement unless FTC chose to make shortfall payments. (*Id.* ¶ 96, Ex. B at Section 3.3(a).)

Accordingly, Plaintiff's contention that it agreed to the Consulting Agreement only because it was guaranteed an exponential return on the License Agreement is conclusively refuted by the agreements themselves. Under the terms of the two agreements, FTC could obtain FCX's consulting services for a year at the agreed rate, sell the minimum quantity of licensed products under the License Agreement for that same year, and then terminate both contracts without owing

15

FCX another dime.  Having agreed to a contractual arrangement that did not in any way guarantee that it would receive any compensation beyond the $190 hourly rate for its consulting services, FCX cannot credibly allege that its belief that it would recover over $100 million under the License Agreement was reasonable or justified.  Its claim of reliance is therefore similarly unreasonable.  And finally, Plaintiff does not allege any underpayment under the License Agreement before the Consulting Agreement terminated in April 2020.  According to its own Complaint, Plaintiff received precisely what it bargained for.

### d.   FTC specifically disclaimed any warranties or representations about the Products or any patent rights covered by the License Agreement.

Implicit in any statement about whether the Voyager Tracker overlaps or infringes Plaintiff's patents is a statement about both the Products and the breadth of Plaintiff's patent rights. *See Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011) ("Determining infringement requires two steps. 'First, the *claim must be properly construed to determine its scope* and meaning.  Second, the claim as properly construed must be compared to the accused device or process.'" (emphasis added) (citation omitted)).  Plaintiff's claim of reliance on what it interpreted as FTC's admission of infringement is unreasonable as a matter of law because FTC specifically disclaimed in the License Agreement any warranties or representations about the products or the breadth of any patent rights covered by the License Agreement.  *See Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 735-36 (2d Cir. 1984) ("[W]here the substance of [a] disclaimer provision[] tracks the substance of [any] alleged misrepresentations, notwithstanding semantical discrepancies, . . . [it] precludes [a finding of] reliance . . . .").

Specifically, in the License Agreement FTC expressly disclaimed any and all representations and warranties about the patent coverage and Products under the agreement – which is precisely the subject of FTC's alleged misrepresentation:

16

EXCEPT AS SPECIFICALLY SET FORTH IN THIS SECTION 9, NEITHER PARTY MAKES ANY (AND HEREBY DISCLAIMS ALL) REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS, IMPLIED OR STATUTORY, INCLUDING **AS TO THE PRODUCTS, THE FITNESS FOR ANY USE OR PARTICULAR PURPOSE, . . . AND/OR BREADTH OF ANY PATENT RIGHTS**

(Compl. Ex. B at Section 9.4 (emphasis added).)

In the face of these specific disclaimers, Plaintiff's fraud claim cannot stand. *See Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 149-50 (S.D.N.Y. 2018) (lessor's broad disclaimer of representations regarding equipment barred lessee's claim of fraudulent inducement based on alleged misrepresentation about suitability of leased equipment); *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 319, 321 (S.D.N.Y. 2002) (seller's disclaimer of representations about "the business" or its profitability barred buyer's claim of fraudulent inducement based on alleged statements about projected revenues).

If Plaintiff had actually and reasonably relied on FTC's purported acknowledgment of "overlap" as an admission of infringement, it was on notice when it entered into the License Agreement that any such representation had been disclaimed. But Plaintiff did not terminate the Consulting Agreement – contradicting any claim that it relied on a representation of "overlap" and a concomitant expectation of revenue under the License Agreement when it entered into the Consulting Agreement.

>     **e.      FCX's fraud claim is duplicative of its breach of contract claim.**

In its breach of contract claim, Plaintiff alleges that FTC's failure to pay milestone payments and royalties due under the License Agreement based on FTC's determination that its Voyager Tracker does not infringe FCX's patents after earlier representations that the product "overlapped," amounts to a breach of the License Agreement. (Compl. ¶¶ 144-163, 183-87.) In its fraud claim, Plaintiff argues that the same conduct amounts to fraudulent inducement. (*Id.* ¶¶

188-197.)  But "'a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract.' . . . '[G]eneral allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim.'" *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (citation omitted).

To maintain a claim for fraud that is distinct from a breach of contract claim, Plaintiff must "(1) 'demonstrate a legal duty separate from the duty to perform under the contract'; (2) 'demonstrate a fraudulent misrepresentation collateral or extraneous to the contract'; or (3) 'seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.'" *Adyb Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.*, No. 1:19-cv-7800-MKV, 2021 WL 1177532, at *21 (S.D.N.Y. Mar. 29, 2021) (citation omitted).  Plaintiff's fraud claim satisfies none of these factors.

First, Plaintiff does not allege that FTC owed a legal duty that is separate from the contractual duty to perform.  Nor does Plaintiff allege any facts showing that FTC "occup[ied] a position of trust or special confidence . . . that imposed obligations beyond the" License and Consulting Agreements.  *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).

Second, Plaintiff's fraud claim is not collateral or extraneous to the contracts between the parties.  "For alleged misrepresentations to be 'collateral or extraneous to the contract,' they must concern matters outside the terms of the contract."  *Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Grp., LLC*, No. 10 Civ. 9078(VM)(MHD), 2011 WL 4063344, at *7 (S.D.N.Y. Aug. 11, 2011).  When a "fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract", it is not collateral. *Telecom Int'l Am., Ltd. v. AT&T Corp.*,

18

280 F.3d 175, 196 (2d Cir. 2001) (citation omitted).  That is precisely what Plaintiff has alleged

here.  FCX's complaint that FTC never intended to pay royalties under the License Agreement is

a breach of contract claim, not a claim of fraud.  *See Lomaglio Assocs. Inc. v. LBK Mktg. Corp.*,

892 F. Supp. 89, 95 (S.D.N.Y. 1995) ("Plaintiff's general claim that [defendant] never intended to

perform its duties under the contract . . . does not elevate this basic claim for breach of contract to

the level of deliberate fraud."); *Argent Elec., Inc. v. Cooper Lighting, Inc.*, No. 03 Civ.

9794(RMB), 2005 WL 2105591, at *8 (S.D.N.Y. Aug. 31, 2005) (finding fraud claim overlapped

breach of contract claim where plaintiff alleged that it was "induced . . . to undergo expenses in

anticipation of contractual rights, while [defendant] never intended to execute or be bound by the

promised contract" (ellipsis in original)).

The terms of the License Agreement likewise make clear that the alleged fraud is not

collateral or extraneous to the agreement because Plaintiff's allegations "arise[] out of the same

facts as [the] breach of contract claim."  *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing,*

*Inc.*, 837 F. Supp. 2d 162, 198 (S.D.N.Y. 2011) (citation omitted).  Plaintiff suggests that FTC's

alleged "overlap" statements amounted to a promise above and beyond the Consulting Agreement

that a forthcoming license agreement would be lucrative to Plaintiff.  But the alleged misstatement

that the Voyager Tracker overlaps Plaintiff's patents lies at the heart of what is already governed

by the License Agreement: which products do and do not trigger royalties.  The Agreement

provides that the "Sale[] of Solar Trackers" triggers royalties to Plaintiff.  (Compl. Ex. B at Section

3.2).  And the License Agreement determines what happens if FTC fails to pay royalties above a

minimum amount – Plaintiff can terminate the License Agreement.  *See Assured Guar. Mun. Corp.*

*v. DLJ Mortg. Cap., Inc.*, 44 Misc. 3d 1206(A), 2014 N.Y. Slip Op. 51043(U), at *9 (Sup. Ct. N.Y.

County 2014) ("[I]f the contract governs the scope of the disputed subject matter, there cannot be a fraud claim . . . .").

Third, Plaintiff does not seek special fraud damages that are unrecoverable as contract damages. Rather, Plaintiff's fraud claim seeks "the value of Plaintiff's lost opportunity to apply its consulting services to other clients." (Compl. ¶ 196.) *eCommerce Indus., Inc. v. MWA Intel., Inc.*, No. 7471-VCP, 2013 WL 5621678, at *51 (Del. Ch. Sept. 30, 2013); *Subramanian v. Lupin Inc.*, No. 17-CV-5040 (RA), 2020 WL 6075523, at *5 (S.D.N.Y. Oct. 15, 2020). And by seeking "the value of the improvements that Plaintiff's labor has provided, and is expected to provide, to FTC's products and sales," Plaintiff essentially seeks compensation for work that is clearly governed by the Consulting Agreement. (Compl. ¶ 197, Ex. A at Section 1 ("Services" means "consulting services FCX provides for the implementation of the patent rights.")).

Plaintiff's plea for "the value of the improvements" that it has provided "to FTC's products and sales" is also a covert attempt to capture royalties and other damages it seeks under the License Agreement. Plaintiff must seek those damages, if any, only though its breach of contract claim, and not a claim of fraud. *Triad Int'l Corp. v. Cameron Indus., Inc.*, 122 A.D.3d 531, 531-32 (1st Dep't 2014) (affirming dismissal of fraud claim as duplicative where "plaintiff [sought] the same compensatory damages for both claims" and "its purported fraud damages [were] actually contract damages").

## II. Plaintiff cannot pursue a claim for unjust enrichment because the License and Consulting Agreements govern the subject matter of the claim.

Plaintiff's Third Claim for Relief for unjust enrichment should be dismissed because two valid, written contracts govern the subject matter of Plaintiff's claim. Unjust enrichment is a quasi-contract claim that cannot be maintained where a valid, written contract governs the same subject matter. *See Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*, 87 F.3d 604, 610 (2d Cir.

1996); *see also Clark Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987) ("It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties."); *Anwar v. Fairfield Greenwich Ltd.*, 831 F. Supp. 2d 787, 796-97 (S.D.N.Y. 2011) (dismissing unjust enrichment claim where plaintiff "provided the Court with an example of the form contract at issue"), *aff'd sub nom. Pujals v. Standard Chartered Bank*, 533 F. App'x 7 (2d Cir. 2013); *Campbell v. Plant Health Intermediate, Inc.*, No. 7:19-cv-3017 (PMH), 2020 WL 3127809, at *9-10 (S.D.N.Y. June 12, 2020) (dismissing unjust enrichment claim under Delaware law because a valid contract existed).[8]

Plaintiff does not dispute that the License and Consulting Agreements govern the parties' relationship with respect to both FCX's consulting services and its intellectual property rights. And Plaintiff alleges that it was fully paid under the License Agreement up until May 2020 – one month after the Consulting Agreement expired by its terms. (Compl. ¶¶ 125-130, 144-45, Ex. A at Section 9.1.)

Plaintiff's unjust enrichment claim is an attempt to rewrite the Consulting and License Agreements to connect them in a manner the parties did not negotiate or agree to. The Consulting Agreement clearly defines the compensation and other terms to which the parties agreed in connection with FCX's provision of consulting services – the same services Plaintiff now claims "unjustly enriched" FTC. (Compl. ¶ 199 ("FTC was enriched by Plaintiff's provision of consulting services."), Ex. A at 1.) Any dispute about fees owed to Plaintiff for those services is governed by the Consulting Agreement. (*Id.* Ex. A at 1); *see Downey v. Adloox Inc.*, 238 F. Supp. 3d 514,

---

[8] There is no material difference between Delaware law, which governs the Consulting Agreement, and New York law on unjust enrichment. *See McBeth v. Porges*, 171 F. Supp. 3d 216, 224 (S.D.N.Y. 2016).

525-26 (S.D.N.Y. 2017) (dismissing an unjust enrichment claim because "any claim [plaintiff] has relates to the compensation and benefits that he received in exchange for what he provided as part of his" employment contract).  The License Agreement governs when and if FTC owes Plaintiff a royalty for its products.  To the extent Plaintiff claims FTC was unjustly enriched by a quasi-contract guaranteeing future royalties, the subject of those royalties is governed exclusively by the very agreement Plaintiff seeks to enforce in this lawsuit.

Plaintiff cannot maintain an unjust enrichment claim seeking extra-contractual remedies when the subject of that claim is governed by two separate contracts negotiated by sophisticated, represented parties at arm's length.  *See Downey* 238 F. Supp. 3d at 526 (plaintiff was entitled to the "benefit of his bargain, but the law of unjust enrichment does not entitle him to more").  Plaintiff could have tied its compensation in the Consulting Agreement to its recoveries from the License Agreement, or it could have terminated the Consulting Agreement at any time and sought to renegotiate the deal.  Plaintiff did none of these things, and it cannot gain in litigation now what it gave up in negotiation in 2019.  The Court should dismiss Plaintiff's unjust enrichment claim.

## III.  The Court should require Plaintiff to replead its patent infringement-based breach of contract claim.

Plaintiff's First Claim for Relief, for breach of contract, is essentially a claim of patent infringement.  Under the License Agreement, the royalties and milestone payments Plaintiff claims are due are premised upon FTC's sale of products that, but for the License Agreement, "infringe" one of Plaintiff's specified patents or patent applications.  (Compl. Ex. B at Section 1.8.)  While the standard for notice pleading is lenient, courts do require certain details in claims involving patent infringement that should apply here to Plaintiff's claim of breach of contract.

The Federal Circuit detailed the pleading requirements for an infringement claim under Rule 8.  *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1258-60 (Fed. Cir. 2018).

Courts in this district have adopted and applied the *Disc Disease Solutions* standard, under which an infringement complaint must, at a minimum, "specifically identif[y] the accused products" and "explain the basis for its belief" that an accused product meets each and every element of a claim. *Signify N. Am. Corp. v. Axis Lighting Inc.*, No. 19cv5516 (DLC), 2020 WL 1048927, at *2 (S.D.N.Y. Mar. 4, 2020) (quoting *Disc Disease Sols.*, 888 F.3d at 1260), *rev'd in part on other grounds on reconsideration*, No. 19cv5516 (DLC) 2020 WL 2079844 (S.D.N.Y. Apr. 30, 2020); *Araujo v. E. Mishan & Sons, Inc.*, No. 19-CV-5785 (GHW)(SN), 2020 WL 5371323, at *3 (S.D.N.Y. Aug. 7, 2020), *report and recommendation adopted*, No. 1:19-cv-5785-GHW, 2020 WL 5369888 (S.D.N.Y. Sept. 8, 2020).

Plaintiff's patent infringement allegations~~, set forth in just six paragraphs on one page of the Complaint,~~ fall well short of even this basic standard. (Compl. ¶¶ 107-124.) Plaintiff alleges only that FTC has sold unspecified "products," recites partial claim language verbatim, and ~~then~~ conclusorily asserts the boilerplate allegation that FTC "has sold products" with that element ~~and that the unspecified products "otherwise met all limitations of" the cited claim~~. (*Id*. ¶¶ 105-124.) These bare-bones allegations are not enough, particularly here. *See Signify*, 2020 WL 1048927, at *2; *Araujo*, 2020 WL 5371323, at *3.

Plaintiff's failure to identify what products it claims infringe, when they were allegedly sold, and how they purportedly infringe is not accidental. Plaintiff incorporated into its Complaint FTC's explanation of why its Voyager Tracker Products do <u>not</u> infringe any claim of two of Plaintiff's patents. (Compl. Ex. J.) The December letter was a response to a November 30, 2020 letter in which Plaintiff alleged that FTC's solar trackers infringed those two patents – which are <u>not</u> the same patents that Plaintiff identifies in this suit as the basis for its breach claims. (Attached as <u>Exhibit 2</u>.) Plaintiff has also filed a separate patent infringement suit in the United States District

Court for the Western District of Texas, asserting that FTC's Voyager product infringes yet another FCX patent – not the two patents in the November 30, 2020 letter nor the claims in the Complaint here. In that suit, captioned *FCX Solar, LLC v. FTC Solar, Inc.*, No. 6:21-cv-548-ADA (W.D. Tex.), Plaintiff identified the accused products, demonstrating that it is perfectly capable of pleading the basic facts it declined to plead here. (Exhibit 1 at 7-8.)

FCX's own shifting positions – including those incorporated in its own complaint – on what products and what patent claims are at issue in its claim of breach of contract, leave FTC unable to meaningfully respond. This problem is compounded by Plaintiff's affirmative allegation that FCX was fully paid under the License Agreement through May 2020 and its failure to allege when the accused products were allegedly sold. And having incorporated in its complaint FTC's explanation of several of the reasons FTC contends its products do <u>not</u> infringe, Plaintiff highlighted the need to address specifically how those products (assuming they are the ones Plaintiff meant to accuse) allegedly <u>do</u> infringe the patent claims Plaintiff has asserted in this action.

Because Plaintiff has failed to plead the basic facts required to support a breach of contract claim that is in substance a patent infringement claim, the Court should require Plaintiff to replead that claim.

## <u>CONCLUSION</u>

FTC's motion to dismiss and for a more definite statement should be granted. This Court should dismiss Plaintiff's Second and Third Claims for Relief with prejudice, and require Plaintiff to amend its First Claim for Relief with a more definite statement identifying the products at issue and the patents or claims on which the claim is premised as to each product.

Dated:  Houston, Texas
      July 23, 2021

Respectfully submitted,

*/s/ Noelle M. Reed*

Noelle M. Reed
Daniel S. Mayerfeld (*pro hac vice* pending)
William S. O'Hare
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
Tel: (713) 655-5122
Fax: (713) 483-9122
Email: noelle.reed@skadden.com
      daniel.mayerfeld@skadden.com
      william.ohare@skadden.com

ATTORNEYS FOR DEFENDANT FTC
SOLAR, INC.