

1155 Avenue of the Americas
22nd Floor
New York, NY 10036-2711

T. +1.212.262.6900
F. +1.212.977.1649
PerkinsCoie.com

November 2, 2021

Matthew J. Moffa
MMoffa@perkinscoie.com
D. +1.212.261.6857
F. +1.212.399.8057

**VIA ECF**

Hon. Ronnie Abrams, USDJ
United States District Court
Southern District of New York
40 Foley Square Room 2203
New York, NY 10007

Re:    FCX Solar, LLC v. FTC Solar, Inc., Case No. 1:21-CV-03556-RA

Dear Judge Abrams:

I represent the plaintiff, FCX Solar, LLC ("FCX" or "Plaintiff") in the above-captioned matter and write pursuant to Local Rule 37.2 and Rule 3 of Your Honor's Individual Practices to request an informal conference regarding the refusal of defendant FTC Solar, Inc. ("FTC") to produce relevant documents that are responsive to Plaintiff's First and Second Sets of Requests for the Production of Documents ("RFP"), attached hereto as Exhibits A and B.

**Procedural History.**  FTC served Responses and Objections to Plaintiff's First and Second Sets of RFPs on September 8 and September 13, 2021, attached hereto as Exhibits C and D.  Plaintiff sent a letter to FTC on September 15, attached hereto as Exhibit E, identifying numerous deficiencies in FTC's Responses and Objections, seeking the basis for FTC's burdensomeness and proportionality objections, and requesting a meet and confer.  After some delay, FTC agreed to a telephonic meet and confer on September 24, which is memorialized in a September 27 letter from Plaintiff, attached hereto as Exhibit F.  Although Plaintiff requested that FTC come to the meet and confer prepared to discuss custodians and search terms for FTC's document collection, FTC did not do so.  Nor did FTC set aside adequate time to discuss all of the issues raised in Plaintiff's letter, and so the parties' meet and confer was adjourned until October 4, 2021.  An October 4 letter from Plaintiff memorializing this meet and confer is attached hereto as Exhibit G.  Further letters between the parties are attached hereto as Exhibits H, I, J, and K.

Plaintiff made an initial production of over 20,000 pages of documents to FTC on September 13, 2021.  FTC has not yet produced even a single document to Plaintiff.  Nor did FTC state in its responses and objections the intended start date of its rolling production of documents, as required by Rule 34(b)(2)(B) of the Federal Rules of Civil Procedure.  *Fischer v. Forrest*, 2017 WL 773694, at *2 (S.D.N.Y. Feb. 28, 2017).  Plaintiff asked FTC on September 15, September 27, October 4, October 6, and October 20 to correct this omission; FTC finally agreed on

The Honorable Ronnie Abrams
November 2, 2021
Page 2

October 25 that it would begin its production by November 12, 2021, three months after Plaintiff served its RFPs and two months after Plaintiff's first production of its own documents.

**Request 1: Custodian Jacob Wolf.**  Plaintiff respectfully requests that the Court order FTC to collect and review the documents of Jacob Wolf, FTC's in-house general counsel.  Mr. Wolf is an important witness in this case because he is the author of the December 23, 2020 letter in which FTC set out its reasons for halting all payments to Plaintiff under the parties' License Agreement and asserted that an "investigation and thorough consideration" by FTC's outside counsel concluded that prior royalty payments "may have been made in error because FTC's dampers have at all times been, and continue to be, noninfringing." (ECF No. 17-10, Ex. J to Plaintiff's Amended Complaint.)

In opposing Plaintiff's request, FTC incorrectly asserts that "any documents on which [Mr. Wolf] appears that are not privileged will also be in the custody of other custodians" and that the only result of collecting Mr. Wolf's documents will be the creation of a lengthy privilege log. (Ex. J at 1.)  Having not yet collected and reviewed documents, FTC has no basis to represent that *all* of Mr. Wolf's responsive documents are also in the possession of other custodians.  Nor is there any basis for a blanket privilege assertion over all of Mr. Wolf's documents.  It is likely that Mr. Wolf participated in conversations regarding the business reasons for halting payments to Plaintiff and subsequently terminating the License Agreement.  *See, e.g.*, *Varughese v. Mt. Sinai Med. Ctr.*, 2014 WL 349698, at *2 (S.D.N.Y. Jan. 31, 2014).  It is also likely that FTC waived the attorney-client privilege over at least some legal advice provided by Mr. Wolf, either by sharing them with third parties outside the scope of the privilege (such as FTC's IPO underwriters) or by putting that legal advice at issue in this litigation.  Finally, any burdensomeness concerns may be alleviated by the use of a categorical privilege log, as contemplated by Local Rule 26.2(c).

**Request 2: Design and Testing Documents.**  RFP No. 10 seeks documents concerning the design, development, and manufacture of the solar trackers at issue in this case.  RFP No. 24 seeks documents concerning the testing and evaluation of the trackers.  FTC has agreed to produce documents concerning the design and testing of one component of the trackers—the damper—but objects to producing documents concerning the design and testing of other components or of the tracker as a whole on relevance grounds.[1]

Documents concerning the design and testing of FTC's solar trackers are plainly relevant because this case concerns Plaintiff's agreement to provide consulting services regarding tracker design and Plaintiff's license of solar-tracker-related IP to FTC.  The value of the services that Plaintiff rendered cannot be measured by looking at the damper in isolation—documents

---

[1] FTC's sole burdensomeness objection concerned a disagreement over the scope of the definition of "Trackers." The parties have since resolved this dispute.

Perkins Coie LLP

The Honorable Ronnie Abrams
November 2, 2021
Page 3

concerning, for example, wind-tunnel testing of the assembled solar tracker are essential to showing how Plaintiff's improved damper design enhanced the safety and quality (and therefore the value) of FTC's tracker.

Moreover, FTC has conceded that documents related to tracker components other than dampers are relevant. First, in their initial disclosures, attached hereto as Exhibit L, FTC identified as separate categories of documents that FTC may use to support its claims or defenses both "[d]ocuments related to the development of the damper used in the Voyager Tracker" and "[d]ocuments related to the technology implemented in FTC's solar tracker products"—that is, technology *other than* dampers. Consistent with this identification, FTC has expressly reserved the right to support its defenses or counterclaims using documents concerning tracker components other than dampers. (Ex. F at 4.) FTC thus understands that such documents are relevant, and absent a valid burden or proportionality objection they must be produced.

**Request 3: Documents regarding "**▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**"**[2] In FTC's December 23, 2020 letter explaining why it had halted payments to Plaintiff under the License Agreement, Mr. Wolf wrote that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (ECF No. 17-10 at 2 (emphasis added).) Plaintiff therefore seeks the production of documents concerning ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. FTC objects on relevance grounds and now claims that—contrary to Wolf's representations ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (Ex. K at 4.) Whether or not this is true, documents concerning FTC's stated reason for breaching its obligations under the License Agreement are relevant to Plaintiff's claims.

**Request 4: Communications Between FTC and its IPO Underwriters.** Via RFP 45, Plaintiff seeks the production of communications between FTC and its IPO underwriters concerning FCX. FTC objects on both relevance and burdensomeness grounds, although FTC has so far refused to substantiate its burden objection. FTC also asserts that such communications may be protected by the attorney-client privilege. But FTC's contemporaneous communications regarding its decisions to breach and terminate the License Agreement are undeniably relevant; FTC has failed to make a meaningful burdensomeness or proportionality objection; and disclosure of otherwise-privileged communications to IPO underwriters waives the privilege. *In re John Doe Corp.*, 675 F.2d 482, 488 (2d Cir. 1982). FTC has no basis to withhold otherwise responsive communications in the possession of agreed-upon document custodians and hitting on agreed-upon search terms simply because the communications are with IPO underwriters.

---

[2] The redactions in this paragraph consist of proprietary or trade secret information and do not require prior Court approval pursuant to Rule 5(A)(i) of Judge Abrams's Individual Rules.

Perkins Coie LLP

The Honorable Ronnie Abrams
November 2, 2021
Page 4

Respectfully submitted,

*/s/ Matthew J. Moffa*

Matthew J. Moffa

By separate order, this matter has been referred to Magistrate Judge Freeman for general pretrial management. These discovery disputes, as well as all future ones, shall be addressed to Judge Freeman.

SO ORDERED.

_____
Hon. Ronnie Abrams
11/09/2021

Perkins Coie LLP