**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FCX SOLAR, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FTC SOLAR, INC.,<br><br>Defendant. | Case No. 1:21-CV-03556-RA |
| FCX SOLAR, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FTC SOLAR, INC.,<br><br>Defendant. | Case No. 1:21-CV-08766-RA |

**PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page**

I. ARGUMENT ..... 1

A. "the damper having a [first/second] damping ratio" ..... 1

1. "Having" does not introduce unreasonable uncertainty ..... 1

2. "Damping ratio" is not indefinite. ..... 2

B. "a valve, configured to passively open or close the second port" ..... 5

1. Defendant has not overcome the presumption against means-plus-function interpretation. ..... 5

2. FTC's alternative construction is improperly limited to an example. ..... 8

C. the "designated angular distance" term (claims 10, 17) and "designed to withstand" terms (claim 18) ..... 9

II. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apex Inc. v. Raritan Comput., Inc.*,
325 F.3d 1364 (Fed. Cir. 2003)....................6

*Arctic Cat v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017)....................8

*Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.*,
838 F. App'x 538 (Fed. Cir. 2020) ....................4

*BASF Corp. v. Johnson Matthey Inc.*,
875 F.3d 1360 (Fed. Cir. 2017)....................4, 5

*Blue Spike LLC v. Grande Commc'ns Inc.*,
No. 4:20-cv-671, 2021 WL 5094911 (E.D. Tex. Nov. 2, 2021)....................10

*Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*,
334 F.3d 1294 (Fed. Cir. 2003)....................6

*Chef America, Inc. v. Lamb-Weston, Inc.*,
358 F.3d 1371 (Fed. Cir. 2004)....................2

*Decision Support, LLC v. Election Sys. & Software, Inc.*,
No. 3:10-cv-190, 2011 WL 13248443 (W.D.N.C. July 1, 2011) ....................10

*Dow Chemical Co. v. Nova Chemicals. Corp.*,
803 F.3d 620 (Fed. Cir. 2015)....................3

*Dyfan, LLC v. Target Corp.*,
28 F.4th 1360 (Fed. Cir. 2022) ....................2, 5, 6, 7

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
91 F.3d 1580 (Fed. Cir. 1996)....................5, 6

*HTC Corp. v. IPCom GmbH & Co.*,
667 F.3d 1270 (Fed. Cir. 2012)....................9

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014)....................3

*Lambda Optical Sols., LLV. v. Alcatel-Lucent USA Inc.*,
No. 10-487, 2012 WL 3201701 (D. Del. Aug. 3, 2012)....................10

*Magnolia Medical Technologies, Inc. v. Kurin, Inc.*,
No. 19-97, 2020 WL 2559795 (D. Del. May 20, 2020) ....................................................8

*McCoy v. Heal Sys., LLC*,
850 F. App'x 785 (Fed. Cir. 2021) ....................................................................8

*Nature Simulation Sys. Inc. v. Autodesk, Inc.*,
23 F.4th 1334 (Fed. Cir. 2022) ....................................................................10

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc)....................................................................1

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
875 F.3d 1369 (Fed. Cir. 2017)....................................................................2, 3, 4

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
550 F.3d 1356 (Fed. Cir. 2008)....................................................................8

*SunRace Roots Enter. Co. v. SRAM Corp.*,
336 F.3d 1298 (Fed. Cir. 2003)....................................................................6

*Synbias Pharma v. Solux Corp.*,
No. 11-CV-3035-H, 2013 WL 12095237 (S.D. Cal. Aug. 20, 2013)....................................10

*Tech. Props. Ltd. v. Huawei Techs. Co.*,
849 F.3d 1349 (Fed. Cir. 2017)....................................................................9

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
789 F.3d 1335 (Fed. Cir. 2015)....................................................................3

*Tobinick v. Olmarker*,
753 F.3d 1220 (Fed. Cir. 2014)....................................................................6

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015) (en banc)....................................................................5, 6

**RULES**

Fed. R. Evid. 703 ....................................................................8

# I. ARGUMENT

## A. "the damper having a [first/second] damping ratio"[1]

### 1. "Having" does not introduce unreasonable uncertainty.

Defendant first argues that these terms are indefinite because a damper cannot "have" a damping ratio. But Defendant improperly isolates the word "having" from its context. The claims do not recite a damper alone but rather as part of a system with the damper "having a first damping ratio *when the collection of photovoltaic modules moves at a first rate relative to the base* and a second damping ratio *when the collection of photovoltaic modules moves at a second rate relative to the base*." *E.g.*, '782 patent claim 1 (emphasis added). *See* Opening Br. 12–14.

Defendant asserts, solely from one *extrinsic-evidence* dictionary entry among a 118-page definition for "having," that the only meaning of "having" is "possessing." *See* Response Br. 12; *but see* Opening Br. 13–14. Tellingly, Defendant's expert did not testify about this point, and Defendant marshals no intrinsic evidence in support. Indeed, the *intrinsic evidence* points to only one possible meaning: that the damper provides damping that differs with rate of movement. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (noting that a specification is usually "dispositive" and is "the single best guide to the meaning of a disputed term" (citation omitted)). Indeed, all statements in the patent about a damper having a damping ratio are in the context of a damper installed in a system; never to a damping ratio of a damper in isolation. Opening Br. 12–13. The specification states, "The damper 140 *provides* damping for the PV system 100." '782 patent at 2:56 (emphasis added).[2] The prosecution history is to the same effect. Opening Br. 13. And Plaintiff's unrebutted expert testimony and technical references show that these terms

[1] Defendant in a footnote challenges the "passively transitions" claims terms, but it relies exclusively on its challenge to the "damping ratio" term to do so. *See* Response Br. 11 n.6.

[2] *E.g.*, '782 patent at 3:1–9 (the damper providing damping "has a variable damping ratio" at "different operating states," such that at "a high damping ratio," the damper "dissipate[s] more energy, and therefore better mitigates undesired oscillations … than a low damping ratio"); *see also* Opening Br. 13.

are consistent with usage in the field, and a person of ordinary skill in the art ("POSA") would know what these terms mean. Opening Br. 14; *see Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1367–68 (Fed. Cir. 2022) (reversing construction in light of unrebutted expert testimony).

Defendant cites only one case, *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004), for the point that courts "may not redraft claims." Nobody is asking for redrafting, and this is not *Chef America*. The claim in that case had only one literal meaning (heating "dough" to a temperature), which, while physically possible, was improbable in view of the specification (which disclosed heating the "oven" to that temperature). *Id.* at 1373. But the literal meaning was unambiguous. *Id.* And so the court could not correct "ordinary, simple English words whose meaning [was] clear and unquestionable." *Id.* at 1373. Here, in contrast, the "damping ratio" referring to the damper alone is both physically impossible and not textually logically (much less compelled). There is only one possible meaning. The standard under *Nautilus* is "reasonable certainty," and no one is confused. Defendant indeed agrees that it would make no sense to refer to the damping ratio as a property of a damper apart from a system. *See* Response Br. 11–12. And Defendant provides nothing to refute Plaintiff's intrinsic evidence. That should be the end of it.

**2. "Damping ratio" is not indefinite.**

Defendant argues that the claims are indefinite because the patent "fails to provide any guidance about how to test and calculate" damping ratios, Response Br. 13, suggesting that a POSA would not even know what kind of test to use, *id.* at 13–17. But determining a damping ratio is a routine, well-understood exercise to a POSA in the field of solar trackers. And "[a] patent need not explicitly include information that is already well known in the art." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1376 (Fed. Cir. 2017).

"Damping ratio" is a common engineering term, and the definition of it here is a "textbook" one. *See* Hall Decl. ¶ 42. "Pluck testing" is "the primary tool" for determining damping ratio, as

acknowledged by Defendant's expert. *See* Codd Dep. 80:8–11. His testimony supports that a POSA would be familiar with how to do pluck testing, would determine the test parameters, would know that there were vendors to perform the service, and would know reasons to determine a tracker's damping ratio. Codd. Dep. (Ex. 13)[3] 61:16–25, 66:2–68:13, 73:10–20, 80:3–81:15; *see also* Hall Dep. (Ex. 14) 125:9–129:12. Thus, Defendant has not shown by clear and convincing evidence that a POSA would not know how to determine a damping ratio.

Further, Dr. Hall explained that different test parameters would not change the *actual* damping ratio. Hall Dep. 142:10–144:17. And he explained how a POSA would know to tell the contribution of the damper, versus other parameters, to the damping ratio. Hall Dep. 127:2–129:12. Indeed, the patent does not claim *test results*, and Defendant's expert did not testify that the system's *actual* damping ratio (or the *difference* in damping ratios at different rates of movement) would depend on test results. Regardless, "disputes … as to the proper application of the test methodology in the circumstances of an individual case" are "disputes about whether there is infringement, not disputes about whether the patent claims are indefinite." *Presidio*, 875 F.3d at 1377.

Defendant's other arguments relate to whether different system parameters or conditions would give different results. But Defendant's cases—*Interval Licensing*, *Teva*, and *Dow*—do not fit its arguments. Those cases stand for indefiniteness (1) if the claimed property is "highly subjective" in its definition (as in *Interval Licensing*) or (2) if there are conflicting definitions of the property (as in *Teva* or *Dow*).[4] They do not endorse finding indefiniteness simply because an engineer could design an inaccurate test. And indeed, the Federal Circuit has rejected indefiniteness

[3] Exhibits 13–15 are attached to the Declaration of Jonathan I. Tietz filed herewith. Other evidentiary citations are as specified in Plaintiff's opening claim construction brief.

[4] *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014), involved the term "unobtrusive manner," which was "purely subjective." *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1338 (Fed. Cir. 2015), involved a polymer with a "molecular weight of about 5 to 9 kilodaltons," but there were inconsistent ways of defining the term. And *Dow Chemical Co. v. Nova Chemicals. Corp.*, 803 F.3d 620, 633 (Fed. Cir. 2015), involved a "slope" on a curved graph with different mathematical definitions of the term and no established method.

theories just like Defendant's. *See, e.g.*, *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360 (Fed. Cir. 2017); *Presidio*, 875 F.3d 1369. For instance, in *BASF*, the patent did not recite "a particular measurement method." 875 F.3d at 1365. Because "an inventor need not explain every detail because a patent is read by those of skill in the art," the question was whether a POSA would "*need* to be given the … measurement information to understand, with reasonable certainty, whether" the limitation was met. *Id.* at 1366 (citation omitted). And "objective tests" "were available and well known at the time." *Id.* at 1368. The patent was therefore not indefinite.

Defendant suggests that various system parameters might affect a damping ratio. But Defendant provided no evidence of the extent that these parameters would matter. Accordingly, Defendant has offered nothing but speculation that "different methodologies" would reach "*materially* different results" in terms of claim scope. *See Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.*, 838 F. App'x 538, 542 (Fed. Cir. 2020) (citing *Takeda Pharms. Co. Ltd. v. Zydus Pharms. USA Inc.*, 743 F.3d 1359, 1366–67 (Fed. Cir. 2014)). After all, "'the mere possibility of different results from different measurement techniques' does not render a claim indefinite." *Id.* (quoting *Takeda*, 743 F.3d at 1366–67). Defendant and its expert offer a hypothetical: that an engineer might measure damping ratio at one velocity at one temperature and the other damping ratio at both a different velocity and a different temperature. *See* Response Br. 15; Codd Decl. ¶¶ 48–49. Setting aside that changing two variables would make no sense to study just one, Defendant's conjecture is conclusory. Its expert offers no quantification of how big the difference might be. And for good reason: he has never studied the effect of temperature change on a single-axis solar tracker damping ratio or seen literature on the subject.[5] FTC's citation to theoretical

[5] Codd Dep. 75:6–15. In contrast, Dr. Hall explained that the contribution of such variables would be minimal. *E.g.*, Hall Dep. 130:14–131:1, 139:9–10. He explained that any contribution of other components would be "[s]everal orders of magnitude" less and provided a technical rationale. Hall Dep. 113:2–18; 118:16–119:17, 122:14–124:6; Hall Decl. ¶¶ 47–48. Dr. Hall also explained how to tell the degree of damping owing to the damper. Hall Dep. 127:2–129:12.

variables, lacking any basis to show extent or materiality, therefore fails.

In short, FTC has offered no evidence of the extent to which changes in testing variables would affect whether a POSA could tell that a system has two different damping ratios at two different movement rates. The parties agree that "damping ratio" is a well-understood mathematical property of a system. It is routinely determined by pluck testing. Defendant has failed to show by clear and convincing evidence that the damping ratio terms do not inform a POSA of the scope of the invention. *See BASF*, 875 F.3d at 1365, 1368.

### B. "a valve, configured to passively open or close the second port"

#### 1. Defendant has not overcome the presumption against means-plus-function interpretation.

Defendant's evidence is not enough to overcome the presumption against means-plus-function interpretation in the absence of the word "means." The claimed damper has a valve and has a port that the valve passively opens or closes. There is no mystical complexity to that. A passive valve does the trick, and persons of ordinary skill in the art know what a passive valve is.

Defendant contends that some of the claim language is functional. Response Br. 18. Regardless of characterization, the mere presence of functional language does not render a term subject to means-plus-function analysis.[6] The means-plus-function form does not apply to claims that "recite both a function and the structure for performing that function." *Dyfan*, 28 F.4th at 1365. The question is "whether it connotes sufficiently definite structure to a person of ordinary skill in the art" *Id.* at 1365. "What is important is ... that the term, as the name for structure, has a reasonably well understood meaning in the art." *Id.* (quoting *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996)).[7] To that end, Plaintiff explained how the claim term has a

---

[6] Thus, Defendant's arguments that "configured to" language is functional miss the point. *See* Response Br. 19 n.12. The cited cases involved truly generic terms: "assembly," "standby unit," "diverter," and "analysis modules." *See id.*

[7] Defendant criticizes Plaintiff for relying on *Greenberg*, reasoning that the case was decided before *Williamson v.*

well understood meaning for structure and recites sufficient structure to perform its function. Opening Br. 15–18. That is common sense. All valves are configured to open or close; some do passively. Calling that function "very specific," *see* Response Br. 19, does not make it so.

As for the prosecution history, the comments Defendant cites—in response to a written-description rejection—discussed the exemplary embodiment of Figures 2A-2C. *Cf.* Response Br. 19. But that does not change the teaching in the specification that "[t]he damper 140 may have configurations other than that shown in FIGS. 2A-2C and may passively regulate the damping ratio in other manners." '782 patent at 4:20–22; *see also id.* at 1:54, 3:54 (calling same an "example"). Indeed, Dr. Ahmadian explained that various valves would be suitable. Ahmadian Dep. (Ex. 15) 84:21–85:13, 94:15–20. The rejection called for the applicant to identify support in the specification. Statements like this, merely made "to show that the written description requirement was satisfied and that no new matter was being introduced [by] amendment," do not provide the "requisite disclaimer" to infer that a patentee has intentionally narrowed its claim scope. *See SunRace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1304–07 (Fed. Cir. 2003). The patentee's only burden was to show that "*at least one* embodiment" supported its amended claims. *Tobinick v. Olmarker*, 753 F.3d 1220, 1227 (Fed. Cir. 2014). It had no obligation to list all structures that would be covered. And it never suggested its claimed invention could only operate as in the Figure 2 example, as might show a "clear" disclaimer or disavowal. *See Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.,* 334 F.3d 1294, 1302-1303 (Fed. Cir. 2003); *Apex Inc. v. Raritan Comput., Inc.*, 325

*Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015) (en banc). But Defendant's criticism is unfounded. The court still regularly cites *Greenberg* for the same points that Plaintiff does. *E.g.*, *Dyfan*, 28 F.4th at 1365; *see also* Opening Br. 16. After all, all *Williamson* did was abandon a previous line of cases arising in 2004 (i.e., after *Greenberg*) that the presumption against means-plus-function claiming required a "heighted evidentiary showing." 792 F.3d at 1349. The en banc court concluded that the proper standard is instead "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* And it cited *Greenberg* for that very point. *Id.* Defendant is wrong, then, when it says that *Greenberg* was "decided under an incorrect standard." *See* Response Br. 21 n.13.

F.3d 1364, 1374 (Fed. Cir. 2003) (rejecting "attempt to limit the scope of a claim limitation to the preferred embodiment" even where specification "only show[ed] one embodiment").

Defendant also asserts that "valve" alone is not "sufficient structure for performing the specialized function identified in the claims." First, that is wrong: a POSA would know which valves passively open or close. Ahmadian Decl. ¶ 46. Nonetheless, the question is whether the whole claim term connotes sufficient structure. Plaintiff explained that it does: a valve is a structural term, and the "passive" language identifies a specific category of them. Of course, it is Defendant's burden to show that "valve" does not connote sufficient structure. Still, Plaintiff *did* provide unrebutted testimony explaining why a passive valve is a well-known structure. Ahmadian Decl. ¶¶ 44–49. And "[i]n cases where it is clear that a claim term itself connotes *some* structure to a person of ordinary skill in the art, 'the presumption that [means-plus-function interpretation] does not apply' is determinative in the absence of 'more compelling evidence of the understanding of one of ordinary skill in the art.'" *Dyfan*, 28 F.4th at 1366 (emphasis added) (citation omitted). Defendant neglects to point out any "more compelling evidence."

A case issued after Plaintiff's brief, but before Defendant's, underscores the point. *Dyfan* involved a less-structural term: "code" "configured to" perform certain functions. *Id. at* 1367. The Federal Circuit reversed the district court's means-plus-function construction, faulting the court for "ignoring key evidence"—that is, "unrebutted deposition testimony"—"regarding how a person of ordinary skill would have understood" the limitations. *Id.* Not *all* "code" could perform the functions. But coupled with "language describing its operation," it "connot[ed] structure." *Id.* at 1368. And so the limitations "connot[ed] a class of structures to a person of ordinary skill" and did not recite "purely functional language." *Id.* That is true here too.

Although Defendant tries to address Plaintiff's analogous cases involving "valve" terms,

*see* Response Br. 21, Defendant (despite its burden) has not cited one case in which "valve" was construed as a means-plus-function limitation. Defendant instead relies on *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 19-97, 2020 WL 2559795, at *3–4 (D. Del. May 20, 2020). But that case involved a "diverter." *See id.* Nothing suggested that a "diverter" was a well-known structure in engineering; it was a generic word named for its function.[8] And Defendant omits that the claimed "diverter" involved a function much more specific than "to passively open or close."[9]

Defendant suggests that Dr. Ahmadian's declaration is not helpful because he is not a person of ordinary skill in the field of solar trackers. Response Br. 10–11. But "[t]hose of ordinary skill … in the particular art are not, of course, the only witnesses who may testify as experts in a patent trial." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 n.5 (Fed. Cir. 2008). And one expert may rely on the views of another. *See, e.g.*, *Arctic Cat v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1369–70 (Fed. Cir. 2017); Fed. R. Evid. 703.[10] Dampers having valves are part of the invention, and Dr. Ahmadian is a damper expert. Dr. Hall, a tracker expert, explained that he would rely on Dr. Ahmadian to understand dampers and their inner workings. *See* Hall Decl. ¶ 27. Indeed, Defendant's own solar tracker expert did not testify about the valve term. Dr. Ahmadian's testimony about that term is therefore pertinent and uncontroverted.

**2. FTC's alternative construction is improperly limited to an example.**

Defendant proposes alternatively that the term be construed as "a valve that selectively closes the second port due to the piston moving at a higher speed, without instructions from a controller." Response Br. 22–24. But that improperly limits the claim to an embodiment,

---

[8] The "structure" that Defendant attributes to the "diverter" came from other claim elements in that case.

[9] I.e., "a diverter … operable in a first [and second] operating mode … configured to transition from the first operating mode to the second operating mode as a result of the initial volume of bodily fluid flowing from the patient and substantial pressure equalization, thereby sequestering in the reservoir contaminants present in the initial volume of bodily fluid, thereby reducing contamination of the subsequent volume of bodily fluid withdrawn from the patient."

[10] *Cf. McCoy v. Heal Sys., LLC*, 850 F. App'x 785, 788 (Fed. Cir. 2021) ("A POSA could, for example, appropriately rely on a seismologist … if in the relevant art the POSA routinely would rely on such expert assistance.").

notwithstanding language in the patent that the embodiment is an "example." Opening Br. 19–20.

Defendant also overstates the importance of—and misreads—the prosecution history. Where there is an ordinary meaning of a term, modifying that meaning requires lexicography or clear and unmistakable disclaimer. *See* Opening Br. 6, 8. The cited prosecution history is neither, and Defendant assigns it outsized weight by ignoring the cited statements' context (*see* section B.1) and by elevating it over the language of the claims and specification. *See HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270, 1276 (Fed. Cir. 2012) (faulting court for "plac[ing] too much weight on the prosecution history" where it conflicted with the claims and specification).

Defendant does not dispute that its construction is narrower than the plain meaning of "a valve, configured to passively open or close the second port." It points only to the prosecution history as support. What it asks for is classic prosecution disclaimer. But where prosecution statements "are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established." *Tech. Props. Ltd. v. Huawei Techs. Co.*, 849 F.3d 1349, 1358 (Fed. Cir. 2017).

As for Defendant's "without a controller" negative limitation, claims 1, 11, and 19 do not even mention a controller, so this limitation has no basis in the claim language. Defendant's only justification is that the applicant cited during prosecution an example lacking instructions from a controller. *See* Response Br. 23–24. But this was only an example. Just because one passive valve operates "without instructions from a controller" does not mean that all do. Indeed, Dr. Ahmadian provided unrebutted testimony that a passive valve could operate *with* instructions from a controller. Ahmadian Dep. 95:4–96:15. Defendant also points to certain expert testimony on this point. *See* Response Br. 23–24. But that testimony was about a different claim term entirely.

**C. the "designated angular distance" term (claims 10, 17) and "designed to withstand" terms (claim 18)**

Defendant only briefly addresses these two terms. The first sets out that there is a

relationship between angular distance, time, and wind loading. If there is no relationship, a system does not meet the claim limitations; if there is, it does. The second sets out that at least one component (among the modules, the base, and the actuator) is designed to withstand particular forces. If a system is configured to withstand some particular average force over some particular period of time, the limitation is met. If not, it is not.

Rather than focus on the entire claim terms, Defendant problematically picks at their parts. It complains that "designated angular distance," "specified amount of time," "specified wind loading," and "average value of moments" are each individually undefined. But the claims do not require a specific value for each. It requires that these parameters of the system are related.

Defendant, presenting little but questions of unknown significance, urges the court to apply a discredited "unanswered questions" theory of indefiniteness. But that is not the standard—nor is absolute certainty. *See Nature Simulation Sys. Inc. v. Autodesk, Inc.*, 23 F.4th 1334, 1338, 1340 (Fed. Cir. 2022) (holding that it is "an incorrect standard" to hold a claim indefinite just because "there are any 'unanswered questions' about the term"). Only *reasonable* certainty is required. *Id.* at 1339. Nor does Defendant engage with the caselaw or explain why there wasn't reasonable certainty here. At any rate, even as to the individual claim terms, courts have had no difficulty construing "designated," "specified," "average," and "designed to" terms.[11] Defendant, despite its burden, does not point to a single case holding otherwise.

## II. CONCLUSION

Plaintiff respectfully requests that the Court adopt its proposed constructions.

---

[11] *E.g.*, *Decision Support, LLC v. Election Sys. & Software, Inc.*, No. 3:10-cv-190, 2011 WL 13248443, at *5 (W.D.N.C. July 1, 2011) (construing "designated time intervals"); *Lambda Optical Sols., LLV. v. Alcatel-Lucent USA Inc.*, No. 10-487, 2012 WL 3201701, at *23–25 (D. Del. Aug. 3, 2012) (holding "specified optical input" definite); *Blue Spike LLC v. Grande Commc'ns Inc.*, No. 4:20-cv-671, 2021 WL 5094911, at *40–41 (E.D. Tex. Nov. 2, 2021) (construing "a routine designed to decode"); *Synbias Pharma v. Solux Corp.*, No. 11-CV-3035-H, 2013 WL 12095237, at *3–4 (S.D. Cal. Aug. 20, 2013) (construing "average values").

April 18, 2022

By: */s/ Gene W. Lee*

Matthew J. Moffa
Gene W. Lee
John Thomas Dixon
Jacob Joseph Taber
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Phone: (212) 261-6825
Fax: (212) 977-1649
e-mail: mmoffa@perkinscoie.com
glee@perkinscoie.com
johndixon@perkinscoie.com
jtaber@perkinscoie.com

James F. Valentine (*Admitted Pro Hac Vice*)
Sarah E. Fowler (*Admitted Pro Hac Vice*)
Moeka Takagi (*Admitted Pro Hac Vice*)
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
jvalentine@perkinscoie.com
sfowler@perkinscoie.com
mtakagi@perkinscoie.com

Jonathan I. Tietz (*Admitted Pro Hac Vice*)
PERKINS COIE LLP
700 13th St NW, Suite 800
Washington, DC 20005-3960
jtietz@perkinscoie.com

*Counsel for Plaintiff FCX Solar, Inc.*