UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
FCX SOLAR, LLC,

                    Plaintiff,                                    **ORDER**

    -against-                                        1:21-cv-03556 (RA) (VF)
                                                       1:21-cv-08766 (RA) (VF)

FTC SOLAR, INC.,

                    Defendant.
---------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge**

        In these patent-infringement and breach-of-contract actions, Plaintiff FCX Solar, LLC ("FCX") served on Defendant FTC Solar, Inc. ("FTC") a request for the production of documents concerning the design, development, manufacture, and production of FTC's "next-generation" solar tracker. See ECF No. 114 (attaching FTC's Responses and Objections to FCX's "First Set of Requests for Production of Documents and Things"); see also ECF No. 43.[1] Among the documents requested by Plaintiff are technical and testing-related documents for Defendant's current-generation solar tracker, as well as its "next-generation" (or alternative design) solar tracker. Defendant objected to the production of documents pertaining to its next-generation solar trackers. See ECF No. 80 at 3. Plaintiff moved to compel the production of documents pertaining specifically to Defendant's next-generation solar trackers. See ECF No. 78. For the reasons discussed below, FCX's request to compel is **GRANTED**.

---

[1] Unless otherwise noted, citations to the docket are to the docket for 21 Civ. 3556.

1

**FACTUAL BACKGROUND**

This is a patent-infringement suit involving "solar trackers"—a device that holds and rotates solar panels to follow the sun's position in the sky in order to generate electrical energy. ECF No. 71 at 2-4. Defendant sells two solar-tracker designs—the Voyager and Voyager+—both of which Plaintiff alleges infringe Plaintiff's intellectual property (the '782 patent). See ECF No. 18, Dkt. No. 21 Civ. 8766 (Patent Compl. ¶¶ 24-66). Apart from the Voyager and Voyager+, Plaintiff thus far has not identified any other solar tracker made by Defendant that it alleges infringes its patent. See ECF No. 131 at 2. Defendant had a license to use the '782 patent until Defendant terminated that license in May 2021. Plaintiff claims that Defendant's use of the invention of the '782 patent has been unlicensed and unauthorized since Defendant terminated the license. See Patent Compl. ¶¶ 20-23.

Since around 2020, Defendant has been designing and testing at least one alternative, "next-generation" solar-tracker design. See ECF No. 131 at 1-2 (pointing to all of the instances where Defendant has confirmed the existence of an alternative tracker design). Plaintiff seeks documents concerning the design and testing of Defendant's next-generation solar trackers. More specifically, Plaintiff seeks design documents and testing for any next-generation designs that Defendant "prototyped, developed, has available, or failed to develop."[2] ECF No. 131 at 2; see also ECF No. 78 at 2.

Defendant has refused discovery into its next-generation design. See, e.g., ECF No. 44 at 3; ECF No. 80 at 3. Defendant contends that documents related to unaccused products, like its next-generation design, are not relevant to Plaintiff's infringement claim. ECF No. 80 at 3; see

---

[2] The relevant Requests for Production are: Nos. 10, 70-78, 97-116, 118, 131-41, 155-56, 159-60, 327-28. See ECF Nos. 43, 114-1, 114-2 (including document requests and responses).

2

also ECF No. 95 at 2; ECF No. 135. At a conference on April 6, 2022, Defendant indicated that there exists "at least one other next generation product." See ECF No. 90 ("Apr. 6, 2022 Tr.") at 47-48; see also ECF No. 147 ("June 28, 2022 Tr.") at 12 (court referencing notion that there exists "one, maybe two next generation products" and defendant not disagreeing).

## DISCUSSION

Federal Rule of Civil Procedure 26 permits a party to seek discovery as to any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The scope of relevancy under Rule 26 is quite broad. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (explaining that relevance under Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); see also Joseph v. Gnutti Carlo S.p.A., No. 15-CV-8910 (AJN), 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016) (referring to relevance under Rule 26 as "extremely broad").

The party seeking discovery has the burden to establish relevancy, but that burden "is not heavy." Pearlstein v. BlackBerry Ltd., 332 F.R.D. 117, 120 (S.D.N.Y. 2019). Once the party requesting discovery has met their burden, "the opposing party must 'justify any restrictions on discovery.'" Id. (citation omitted). "Discovery may be curtailed where the information sought would be 'unreasonably cumulative or duplicative' or when 'the burden or expense of the proposed discovery outweighs its likely benefit.'" Blagman v. Apple, Inc., No. 12-CV-5433 (ALC) (JCF), 2014 WL 1285496, at *4 (S.D.N.Y. Mar. 31, 2014) (citation omitted). A district court has "wide latitude to determine the scope of discovery," and "abuses its discretion only when the discovery is so limited as to affect a party's substantial rights." In re Agent Orange

Prod. Liability Litig., 517 F.3d 76, 103 (2d Cir. 2008) (internal quotation marks and citation omitted).

Under Federal Rule of Civil Procedure 37, a party may seek an order to compel discovery, provided the movant has in good faith conferred with the opposing party in an attempt to secure the sought responses or documents. Aetna Life Ins. Co. v. Licht, No. 03-CV-6764 (PKL), 2005 WL 180873, at *1 (S.D.N.Y. Jan. 27, 2005) (citing Fed. R. Civ. P. 37(a)(2)(B)). Motions to compel under Rule 37 are left to the sound discretion of the district court. Antolini v. Thurman, No. 19-CV-9674 (JMF) (KNF), 2020 WL 6048784, at *2 (S.D.N.Y. Oct. 13, 2020) (citing United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000)).

Plaintiff raises several arguments to support its claim that discovery pertaining to Defendant's next-generation solar tracker is relevant and discoverable. First, Plaintiff contends that the existence of a next-generation design is pertinent to its damages calculation and, specifically, to a determination of a reasonable royalty. ECF No. 131 at 3. Second, Plaintiff argues that the existence of Defendant's next-generation solar tracker informs whether Defendant willfully infringed the patent. Id. at 5. And third, Plaintiff argues that discovery into Defendant's next-generation design is pertinent to the issue of the patent's validity, because it informs the secondary consideration of nonobviousness. Id. at 6. As discussed below, any one of these reasons supports compelling the discovery sought by Plaintiff here. In short, Plaintiff has made a particularized showing establishing why the information it seeks is relevant to its case, and Defendant has not argued that the discovery sought is cumulative or burdensome.

A. The discovery sought is relevant to Plaintiff's damages calculation.

In a patent case, there are two general approaches to measuring a plaintiff's damages: lost profits and a reasonable royalty. Lucent Techs. Inc. v. Gateway, Inc., 580 F.3d 1301, 1324 (Fed.

Cir. 2009). In assessing a patent holder's damages, a court is tasked with determining the amount the patent holder would have made had the infringer not infringed the patent. Id. A patentee has the burden of proving damages. Dow Chm. Co. v. Mee Indus., Inc., 341 F.3d 1370, 1381 (Fed. Cir. 2003).

One common approach used to calculate a reasonable royalty is the "hypothetical negotiation," which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." Lucent Techs., 580 F.3d at 1324. "The hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement." Id. at 1325. Factors relevant to a reasonable royalty determination include those set out in Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). See i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 853 & n.3 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011); Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1393 (Fed. Cir. 2003); see also Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1159 (6th Cir. 1978) (discussing relevant factors examined in determining a reasonable royalty).

A factor considered in determining a reasonable royalty is the "costs and availability of non-infringing alternatives" at the time of the infringement. Aqua Shield v. Inter Pool Cover Team, 774 F.3d 766, 771-72 (Fed. Cir. 2014); see also Micro Chem., 317 F.3d at 1393-94 (examining testimony on reasonable royalty and discussing "availability of non-infringing alternatives at the time of infringement" as relevant to calculation of reasonable royalty); Visteon Global Techs., Inc. v. Garmin Intern., Inc., 903 F. Supp. 2d 521, 528 (E.D. Mich. 2012). For example, if an infringer had an "acceptable, noninfringing alternative" that the infringer "could have switched [to] at the time of the hypothetical negotiation," a lower reasonable royalty may

5

be appropriate. See Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1372-73 (Fed. Cir. 2008) (discussing court's reduction in the royalty rate based on its consideration of potential non-infringing alternatives available to infringer); Zygo Corp. v. Wyko Corp., 79 F.3d 1563, 1571-72 (Fed. Cir. 1996) (noting that the alleged infringer "would have been in a stronger position to negotiate for a lower royalty rate knowing it had a competitive noninfringing device 'in the wings'"). "When an infringer can easily design around a patent and replace its infringing goods with non-infringing goods, the hypothetical royalty rate for the product is typically low." AstraZeneca AB v. Apotex Corp., 782 F.3d 1324, 1334-35 (Fed. Cir. 2015). Conversely, "if avoiding the patent would be difficult, expensive, and time-consuming, the amount the infringer would be willing to pay for a license is likely to be greater." Id. at 1335. Additionally, the "costs and availability of non-infringing alternatives" may show that the patented technology allowed the infringer "to avoid taking a different, more costly course of action," warranting a larger royalty. Prism Techs. LLC v. Sprint Spectrum L.P., 849 F.3d 1360, 1376 (Fed. Cir. 2017) (quotation marks and citation omitted).

For purposes of the reasonable royalty calculation, a non-infringing design may be considered even if it was not available in the market or did not exist at the time of the infringement. See Visteon Global, 903 F. Supp. 2d at 589-29 ("The alleged infringer need not demonstrate that the noninfringing alternative in fact existed at the time but must establish that it was more than theoretically possible, and in fact available to be marketed.") (quotation marks and citation omitted). Ultimately, in determining a reasonable royalty, the court is attempting to assess the "economic value of the patented technology in the marketplace." LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 79 (Fed. Cir. 2012).

Courts have permitted the type of discovery Plaintiff seeks here—into a defendant's non-infringing alternative to the patented technology—concluding that it is relevant to a plaintiff's damages claim and to an assessment of a reasonable royalty. See, e.g., Illumina Inc. v. BGI Genomics Co., No. 20-CV-01465-WHO (TSH), 2020 WL 7047708, at *1-2 (N.D. Cal. Dec. 1, 2020); Vermeer Mfg. Co. v. Toro Co., No. CIV-19-855-D, 2020 WL 1236312, at *3-5 (W.D. Okla. Mar. 13, 2020); Baxter Int'l, Inc. v. Becton, Dickinson & Co., No. 17-C-7576, 2020 WL 424918, at *6-7 (N.D. Ill. Jan 27, 2020). And such discovery into non-infringing alternatives has been permitted even where the non-infringing design belonged to a *third party*, and not the alleged infringer. See, e.g., Vermeer Mfg., 2020 WL 1236312, at *4-5.; cf. Baxter Int'l, 2020 WL 424918, at *6-8 (reasoning that "non-infringing alternative sold by a third party" is relevant to a reasonable royalty determination).

Defendant acknowledges that a non-infringing, alternative design is relevant to the calculation of a reasonable royalty. See ECF No. 126 ("May 5, 2022 Tr.") at 30. But Defendant contends that there is no reason Plaintiff "would want discovery on non-infringing alternatives in the context of [a] reasonable royalty," because the existence of a non-infringing alternative only "helps the defendant" in the calculation of a reasonable royalty. Id. at 30-31; see also ECF No. 135 at 2. This argument fails for several reasons.

First, as the above discussion illustrates, the existence of a non-infringing alternative *is* relevant to a plaintiff's damages calculation. As explained, for instance, if avoiding infringement would be challenging or costly—because the non-infringing alternative is not available or cannot be easily switched to—that itself could justify a greater reasonable royalty. See, e.g., AstraZeneca, 782 F.3d at 1334-35; see also Riles v. Shell Exploration & Prod. Co., 298 F.3d 1302, 1312 (Fed. Cir. 2002) ("The economic relationship between the patented method and non-

7

infringing alternative methods, of necessity, would limit the hypothetical negotiation."). Defendant is thus mistaken that there is "no reason" a plaintiff would want discovery into the existence of a non-infringing alternative for establishing a reasonable royalty. See May 5, 2022 Tr. at 30-31. Second, Defendant's argument ignores that under the Federal Rules of Civil Procedure information is discoverable if it is relevant to "*any* party's claim or defense." See Fed. R. Civ. P. 26(b)(1) (emphasis added). Thus, even if Defendant were correct (and it is not) that information pertaining to non-infringing alternatives was only relevant to its defenses, discovery would still be permitted under Rule 26. And third, Defendant's argument ignores that it is Plaintiff's burden to establish a reasonable royalty and, as just discussed, courts routinely consider the existence of a non-infringing alternative in the determination of a reasonable royalty.

Defendant also argues that courts deny discovery into unaccused, non-infringing products unless the unaccused products are "reasonably similar" to the accused products—a showing Defendant contends Plaintiff has not made here. ECF No. 135 at 2-3. All of the cases Defendant cites to support this argument concern discovery into unaccused products for the purpose of uncovering additional products to accuse of infringement. Stated otherwise, a party sought the discovery to support a claim of infringement and to identify the existence of any new infringing products.[3] That is not the basis for which Plaintiff seeks discovery into Defendant's next-

---

[3] See Hologram USA, Inc. v. Pulse Evolution Corp., No. 2:14-CV-00771 (GMN) (NJK), 2016 WL 3353935, at **1, 4-6 (D. Nev. June 10, 2016) (case where plaintiff had not identified any "domestic allegedly infringing system" by defendant and plaintiff sought discovery into all of defendant's products, including unaccused products; court denied discovery because plaintiff was attempting to shift the burden to defendant to identify infringing products); dlhBowles, Inc. v. Jiangsu Riying Elecs. Co., 5:21-CV-00170 (DAR), 2022 WL 672073, at **2-3 (N.D. Ohio Mar. 7, 2022) (seeking discovery into unaccused products of defendant to support infringement claim and determine whether it had any basis for an infringement claim as to those products); Ethicon LLC v. Intuitive Surgical, Inc., No. 17-871 (LPS) (CJB), 2018 WL 1392341, at *1-3 (D.

generation design. And Defendant cites to no case where a plaintiff had to show that the products were "reasonably similar" for discovery relating to an unaccused product to be permitted where, as here, the discovery was sought to support a damages calculation.

Next, relying on Sensor Electronic Technology, Inc. v. Bolb, Inc., No. 18-CV-05194 (LHK) (VKD), 2019 WL 570758 (N.D. Cal. Feb. 12, 2019), Defendant argues that any discovery into its next-generation design is premature because it has not designated its next-generation design as a non-infringing alternative. ECF No. 135 at 3. As an initial matter, the court in Sensor Electronics acknowledged that the existence of a non-infringing alternative was relevant to a reasonable royalty determination. See 2019 WL 570758, at 3. It nonetheless concluded that discovery was premature at that point, in part, because the local patent rules in that jurisdiction set out a schedule for the parties to disclose their respective damages contention. Id. Here, the case is near the end of fact discovery and the damages phase has not been bifurcated from the liability phase.

In any event, Defendant, by way of various public statements, has effectively identified its next-generation design as a potential non-infringing improvement or alternative to Plaintiff's patent. See, e.g., ECF Nos. 131 at 1-2, 140 at 1-2 (collecting statements by Defendant about next-generation design). For instance, Plaintiff sent a letter to Defendant, on November 30, 2020, informing Defendant that it might be infringing the patent if it had "incorporated [dampers] into its project[s]," given that the license agreement had been terminated. ECF No. 16-10 at 2. In response, Defendant's General Counsel, in a letter dated December 23, 2020, said that Defendant

---

Del. Feb. 12, 2018) (discovery sought to support claims of infringement and to potentially support amendment to complaint to assert claim of infringement against unaccused product); Datatrak Int'l, Inc. v. Medidata Solutions, Inc., No. 1:11-CV-458, 2015 WL 12734894, at *2 (N.D. Ohio 2015) (denying discovery into unaccused product where plaintiff sought such discovery to support its infringement claims).

was "in the midst of designing and implementing its own proprietary, next-generation dampers, which include multiple damping ratios and an active locking system." Id. The ability to provide variable damping ratios for different weather conditions is the invention of Plaintiff's patent. See ECF No. 71 at 4; see also June 28, 2022 Tr. at 16. Defendant also has publicly explained that its next-generation design relates to the Voyager and Voyager+ products—the products accused of infringement here—and was intended to improve those products. For instance, in a posting on Twitter in September 2021, Defendant indicated that its "proprietary damper design" was used as part of "Voyager+ Solar Tracker" to "eliminate[ ] torsional galloping." See ECF No. 114-2 at 19 (RFP No. 86). Defendant's own public statements thus suggest a connection between the accused products (Voyager and Voyager+) and Defendant's next-generation design.[4]

    B. <u>The discovery sought is relevant to determining whether any infringement was willful.</u>

Plaintiff also contends that discovery into Defendant's next-generation design is relevant to assessing whether Defendant's infringement was willful, which would merit enhanced damages. ECF No. 131 at 5-6. Under 35 U.S.C. § 284, a court "may increase the damages up to three times the amount found or assessed." These "enhanced damages" are available when an infringement is willful—that is, the infringement was "deliberate or intentional." Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc., 946 F.3d 1367, 1378 (Fed. Cir. 2020) (citation omitted); see also Halo Elecs. Inc. v. Pulse Elecs., Inc., 579 U.S. 93, 103-04 (2016). In

---

[4] For this reason, Defendant's reliance on Deckers Outdoor Corp. v. Sears Holding Corp., No. 2:14-CV-02561 (ODW) (CWX), 2014 WL 7185355 (C.D. Cal. Dec. 15, 2014), is misplaced. In Deckers, the plaintiff sought "documents regarding all footwear that Defendants have ever sold in the United States." Id. at *1. Concluding that the request was "overly broad," the court stated that "information about footwear generally has no bearing on reasonabl[e] royalties for the accused products." Id. Here, however, Plaintiff's request is targeted to a next-generation design that Defendant itself has publicly acknowledged was intended to improve on Plaintiff's product and relates to Defendant's accused product.

determining if an infringement was willful, a court will examine whether the infringer "attempted to design" around the patent. Eko Brands, 946 F.3d at 1377; Applied Med. Res. Corp. v. U.S. Surgical Corp., 435 F.3d 1356, 1364-65 (Fed. Cir. 2006); i4i Ltd., 598 F.3d at 860.

For instance, in Applied Medical Resources, the Federal Circuit affirmed a jury's finding that the defendant's infringement was willful because the evidence at trial showed that the defendant's efforts to "design around" the patent were not in good faith. 435 F.3d at 1364. There, the evidence demonstrated that the defendant "desperately needed" the product to "satisfy its customer demands"; the defendant "began its redesign efforts only in response to the threat of an injunction"; and defendant "did not give its engineers sufficient time to avoid an infringing design." Id. at 1365-66. As the court's discussion of the evidence adduced at trial illustrates, discovery into the nature and extent of a defendant's attempt to design around the patent is relevant to a jury's determination as to whether a defendant's infringement was willful. "A legitimate attempt to design around a patent and a good faith belief that one has done so may undercut a finding of willfulness." Illumina, 2020 WL 7047708, at *1 (citation omitted). Courts thus permit discovery into unaccused products as relevant to a willfulness determination. See, e.g., Illumina, 2020 WL 7047708, at *2.

Defendant argues that its next-generation design does not meet the definition of a "design-around," because there is no evidence that it was created at the direction of counsel, and therefore information pertaining to the design is not relevant to a willfulness determination. ECF No. 135 at 4. First, whether a design alternative (or design-around) was created at the behest of counsel goes to whether the information pertaining to the design may be privileged. See, e.g., Illumina, 2020 WL 7047708, at *3 (explaining that courts "routinely allow discovery into design around, notwithstanding that at some level it's all done ultimately at the direction of counsel").

11

But counsel's involvement, or lack thereof, does not restrict discovery into a design-around, which, at bottom, is merely an attempt to create a non-infringing product. See Thermos Co. v. Starbucks Corp., No. 96–3833, 1998 WL 781120, at *5 (N.D. Ill. Nov. 3, 1998) ("Information relating to redesign efforts are not immune from discovery simply because an attorney was involved in the process."). In Illumina, for instance, the court permitted discovery into the defendants' design-arounds, rejecting a claim of privilege, because "at some level" design-arounds are "all done ultimately at the direction of counsel and with a view toward litigation." Id. at *3.

Moreover, Defendant's argument that its next-generation design is not a "design-around" because there is no indication that counsel was involved in its creation falls flat in light of the letter sent by Defendant's general counsel to Plaintiff in December 2020. See ECF No. 16-10 (Wolff Ltr.). In that letter, Defendant's counsel expressly discusses Defendant having begun to "design and implement its own proprietary, next-generation dampers," and the letter explains that the "new damper does not infringe" Plaintiff's patents because it does not "include a damper piston having ports of different sizes." Id. at 2-3. At a minimum, the content of the letter, coupled with Defendant's knowledge that the patent existed, plausibly suggests that counsel could have had some input in the creation of Defendant's next-generation design, if only to ensure that the design did "not infringe" Plaintiff's patent. Thus, even if, as Defendant contends, some evidence of counsel's involvement were necessary to permit discovery into a design-around, such evidence exists here.

C. The discovery sought is relevant to the validity of Plaintiff's patent.

Plaintiff also argues that the discovery it seeks into Defendant's next-generation design informs secondary considerations of nonobviousness and is thus relevant to the validity of its

patent. ECF No. 131 at 6-7. Under 35 U.S.C. § 282, although a patent is presumed valid, a defendant may defend against a claim of infringement by arguing that the patent is invalid. One statutory ground upon which a defendant may contest the validity of the patent is that the patent "would have been obvious." 35 U.S.C. § 103; see also Pfizer Inc. v. Mylan Pharmaceuticals Inc., 71 F. Supp. 3d 458, 466-67 (D. Del. Oct. 22, 2014) (discussing legal standard for challenging patent's validity based on obviousness).

In Graham v. John Deer Co., the Supreme Court explained that an analysis of obviousness under Section 103 examines "secondary considerations," such as "commercial success, long felt but unsolved needs, [and] failure of others," which are all "indicia of obviousness or nonobviousness." 383 U.S. 1, 17-18 (1966); see also Apple Inc. v. Samsung Elecs., Ltd., 839 F.3d 1034, 1052-57 (Fed. Cir. 2016) (discussing factors relevant to obviousness inquiry including copying and long-felt need). If the validity of a patent is challenged, a court must consider "all evidence relating to obviousness before finding a patent invalid" as obvious. In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig., 676 F.3d 1063, 1075. In other words, secondary considerations of obviousness must be considered before a court can invalidate a patent as obvious. Id. at 1075-76 (collecting cases).

Here, Defendant has raised the patent's purported obviousness as a basis for claiming that it is invalid. See ECF No. 22 at 10-11 (First Defense: Invalidity), Dkt. No. 21-CV-08766. Whether Defendant's next-generation design is able to address the same need as Plaintiff's patent is thus relevant to an assessment of whether the patent was obvious at the time of invention. See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1328-29 (Fed. Cir. 2009). For instance, whether Defendant tried but failed to develop a solar tracker that provided the same wind dampening function as Plaintiff's patented design would be relevant to

show that the patent was not obvious. See, e.g., Pfizer Inc. v. Mylan Pharmaceuticals Inc., 71 F. Supp. 3d 458, 475 (D. Del. 2014); United Therapeutics Corp. v. Watson Laboratories, Inc., 200 F. Supp. 3d 272, 278 (D. Mass. 2016) ("[T]hat others failed to develop a claimed invention may carry significant weight in an obviousness inquiry.") (citation omitted, alteration in original).

Addressing the issue of obviousness, Defendant argues that its next-generation design is "irrelevant to any alleged 'long-felt and unmet need'" because its next-generation design is from "*well after*" the filing date of Plaintiff's patent. ECF No. 135 at 4-5 (italics in original). But as the Court in In re Cyclobenzaprine recognized, the secondary considerations (or objective indicia of non-obviousness) "may not be available until years after an application" for a patent is filed.[5] See 676 F.3d at 1080 n.7.

Defendant relies heavily on Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318 (Fed Cir. 1990), to argue that discovery regarding unaccused products is "generally not relevant to a party's claim." See ECF No. 135 at 5; June 28, 2022 Tr. at 9-11. But Micro Motion does not support that categorical proposition. In Micro Motion, the patent owner (Micro Motion) sought discovery from "*nonparty* competitor[s]"—five companies that "allegedly compete[d]" with it—concerning those competitors' unaccused products for "the issue of damages in the underlying patent infringement suit." Id. 1319-21 (emphasis added). According to Micro Motion, the requested material "was relevant to the issue of 'damages,'" because for Micro Motion "to recover lost profits" in the patent suit against the defendant, "Micro Motion might have to prove that [the non-party competitors' products] were infringements or were unacceptable

---

[5] Federal Circuit case law appears to use the terms "secondary considerations," "objective indicia," and "objective considerations" interchangeably to refer to the same factors discussed by the Supreme Court in Graham, as informing an analysis of obviousness. See, e.g., Intercontinental Great Brands LLC v. Kellogg N. Am. Co., 869 F.3d 1336, 1353 n.1 (Fed. Cir. 2017) (Reyna, J., dissenting).

14

noninfringing substitutes." Id. at 1321. As the court reasoned, to obtain discovery from a "a wholly uninvolved nonparty," the patent owner had to put forth more than "a theoretical argument that the requested information somehow relate[d] to its pending [state] action." Id. at 1324-25 (internal quotation marks omitted). Micro Motion thus had not proffered a concrete basis for concluding that the information it sought—from a nonparty to the suit—was relevant to a claim or defense in the action. Moreover, "Micro Motion's asserted entitlement to discovery of information concerning each competitor's business" raised the specter that a "a patentee could, in virtually every infringement suit, immediately obtain discovery from all possible competitors by merely filing a complaint asking for damages against one."[6] Id. at 1324-25.

The circumstances here are distinguishable from those in Micro Motion. First, Plaintiff seeks information from defendant, a party to the suit. Plaintiff has made a particularized showing of relevancy, proffering three grounds for why the information it seeks is relevant to its claims. Additionally, Plaintiff has explained how the information sought is relevant, not only to its damages case, but also to its case-in-chief, because Defendant has raised the affirmative defense of invalidity. Further, Plaintiff is not seeking information about all of Defendant's products. Plaintiff's request is targeted to a next-generation design that involves a subset of one or maybe two alternative designs. And Defendant itself has publicly identified that next-generation design

---

[6] Further compounding the problematic nature of Micro Motion's request was the fact that it sought the discovery for a lost-profit analysis. 894 F.2d at 1323. Because there were multiple competitors in the market, Micro Motion would have had to show that "but for" the infringement by the defendant, "it would have made the infringer's sales." Id. at 1322. This would have required Micro Motion to prove that any alternative competitor "is an infringer or puts out a noninfringing product that is an unacceptable alternative, or has insignificant sales." Id. As the court noted, this would have turned Micro Motion's suit against defendant "into an absolute quagmire of proof," requiring "the jury [to] resolve numerous additional mini-infringement trials on each competing product under each of its patents." Id. at 1323-24. That risk is not presented here.

as relating to Voyager+—one of the accused products at issue in this suit. For this reason, Defendant's argument that allowing discovery here would somehow signal "a free-for-all in the case with companies with many products" is meritless. See June 28, 2022 Tr. at 10.

In sum, Plaintiff has amply demonstrated its entitlement to the discovery sought, and Defendant has not raised an argument that the discovery would be unduly burdensome or cumulative.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel is GRANTED. The Clerk of the Court is directed to terminate the motion at ECF No. 125.

Date: August 22, 2022
    New York, New York

Respectfully submitted,

_____
VALERIE FIGUEREDO
United States Magistrate Judge